2010 VT 73

**Soon KWON and Mikyung Kwon v. Allison EATON, Blair Tino, Elizabeth Mazer, Hayley Duval, Katrina Longhammer and Kimberly Murtha**

[8 A.3d 1043]

No. 09-367

¶ 1. August 6, 2010. Landlords, Soon and Mikyung Kwon, appeal the Chittenden Superior Court's decision to award attorney's fees to six tenants, as well as the amount of attorney's fees the court awarded to landlords. Landlords contend that because they recovered a net judgment of $8,071.50 and tenants did not recover any net sum, landlords alone should be entitled to receive attorney's fees. Additionally, they argue that the court reduced their own award of attorney's fees without a proper basis for doing so. We affirm.

¶ 2. Landlords own a Victorian house in Burlington. The house includes an apartment that they rented to six college students, Elizabeth Mazer, Blair Tino, Allison Eaton, Kimberly Murtha, Katrina Longhammer, and Hayley Duval. Tenants and landlords agreed that during the summer of 2007 landlords would renovate the apartment while tenants were out of state. The planned renovations included the creation of a fire egress, the addition of a new bedroom, and the remodeling of the kitchen and second- and third-floor bathrooms. The parties further agreed that the renovations would be "completed during the summer and during the recess period in order not to disturb the tenants." Landlords agreed to compensate tenants for any inconvenience caused during the kitchen renovation period.

¶ 3. As the summer passed, and tenants began preparing for their return to Burlington, it became clear that landlords

would not be able to complete the renovations before the start of the fall semester. The parties therefore agreed that tenants would not move into the apartment at the end of the summer, as initially planned. Landlords proposed two alternatives in an attempt to remedy the inconvenience to tenants: (1) tenants could stay at a nearby inn at landlords' expense; or (2) tenants could stay at a friend's residence and receive from landlords thirty-nine dollars per day for each day that the apartment was not ready for occupancy.[1] Under either option, however, landlords insisted that tenants continue to pay their rent in full. Each tenant eventually opted for the thirty-nine dollar per diem.[2]

¶ 4. As of early October, the construction was sufficiently complete such that tenants were able to move into the apartment. The renovations continued, however, into December. In the meantime, landlords attempted, largely unsuccessfully, to collect unpaid rent from tenants. Five of the six tenants did not fully pay rent for the summer months, only two tenants paid rent for the month of October, and each tenant withheld rent payments for November and December. Unable to prompt tenants to pay, landlords terminated the tenancy, and tenants vacated the apartment by December 15.

¶ 5. The dispute over the unpaid rent ultimately spurred litigation. Landlords brought a breach-of-lease action arising out of tenants' failure to pay rent.[3] Land-

lords also sought attorney's fees pursuant to a lease provision providing for recovery of "reasonable attorney's fees and expenses allowed by law" in the event tenants defaulted on their responsibilities under the lease.[4]

¶ 6. Tenants counterclaimed, alleging breach of lease, breach of the statutory warranty of habitability, and violation of the Vermont Consumer Fraud Act. They also sought attorney's fees and costs.

¶ 7. At trial, the court directed a verdict for landlords on their breach-of-lease claim,[5] concluding that the lease obligated tenants to pay $20,670 in rent. The court noted that tenants had already paid $4,383.50 of this amount, resulting in a net judgment for the landlords of $16,286.50. The tenants' counterclaims were submitted to the jury, to be considered in light of the court's directed verdict. The court instructed the jury that "[y]our duty is to determine whether the tenants deserve to have deductions applied to this amount."

¶ 8. With respect to the claims of breach of lease and breach of warranty of habitability, the trial court instructed that the jury could award damages equal to the value of the dwelling according to the terms of the lease minus the value of the dwelling as it existed in its defective condition. The court instructed that the jury could also award compensatory damages to compensate tenants for any out-

---

[1] Landlords also allege that they offered a third option: allowing tenants to find a new apartment and releasing them from the lease altogether. This allegation, however, is disputed by at least some tenants.

[2] One of the tenants initially stayed at the inn, but she too eventually opted for the thirty-nine dollar per diem instead.

[3] Two of the tenants did not sign a lease. Landlords sought damages from them on

a theory of unjust enrichment. One tenant signed a lease for the earlier school year, but not for the period in issue. Landlords alleged that he was a hold-over tenant who was bound by the terms of the expired lease.

[4] Landlords did not seek attorney's fees and costs from the two tenants who did not sign a lease.

[5] Apparently, the court found a breach of the lease even against the two tenants who had no lease.

of-pocket expenses, as well as discomfort, annoyance, and inconvenience, that they incurred as a result of any breach of warranty of habitability. The court further instructed the jury that, for violations of the Consumer Fraud Act, it could award actual damages equal to the amount necessary to compensate tenants for their losses due to a misrepresentation, if they so found, that the apartment would be ready when the tenants returned to school. Additionally, the court instructed that the jury could award exemplary damages, if it found that landlords acted with malice, ill will, or wanton disregard for tenants' rights and interests.

¶ 9. After finding for tenants on all three counts of the counterclaims, the jury awarded tenants $8,215 in actual damages for breach of contract (forty percent of damages) and breach of warranty of habitability (sixty percent of damages). However it gave no additional compensatory damages for the breach-of-warranty-of-habitability claim and no award of damages for the consumer-fraud claim. Offsetting tenants' award against the trial court's directed verdict awarding landlords $16,286.50 resulted in a net judgment for landlords in the amount of $8,071.50.

¶ 10. Following the jury verdict, both landlords and tenants moved for attorney's fees. Landlords contended that under the lease agreement they were "entitled to recover reasonable attorney's fees and expenses allowed by law," which, according to landlords, totaled $24,176.25. Landlords contended that, as the "prevailing party," they "achieved excellent results," and thus their "attorney should recover a fully compensatory fee." Tenants likewise moved for attorney's fees, citing statutory authority permitting recovery of reasonable costs and attorney's fees from a landlord who has been found liable for breaching the statutory warranty of habitability, 9 V.S.A. § 4458, and

for violating the Consumer Fraud Act, *id.* § 2461(b). Tenants sought recovery for attorney's fees totaling $22,646.25. In support of the motions, each party submitted a sworn affidavit from its attorney, and tenants additionally submitted an affidavit from a third-party attorney who attested to the reasonableness of tenants' attorney's fees.

¶ 11. The court granted both motions for attorney's fees, albeit for reduced amounts. With respect to landlords' motion, the court permitted recovery for 95 of the 124 hours billed by landlords' counsel, totaling $18,525. The court concluded that, although the time billed for trial preparation was "reasonable, and appropriate[,] . . . much of the litigation, and discovery/motion work prior to that point was not entirely productive, or useful to the court in moving the case to conclusion." Thus, it omitted 29 hours from landlords' attorney's fee award. The court similarly awarded tenants less in attorney's fees than requested, approving $18,975, or 115 of the 137.25 hours of legal work performed on tenants' behalf. Landlords timely appealed the court's decision.

¶ 12. Landlords argue on appeal that the court erred in awarding attorney's fees to tenants. They contend that, although the jury found in favor of tenants on their claims of statutory warranty of habitability and consumer fraud, tenants are not entitled to attorney's fees, as they recovered no net damages and therefore, in landlords' words, "have not prevailed." Landlords additionally argue that the court erred with respect to their own attorney's fee award by granting them an amount less than the total attorney's fees actually incurred by landlords.

¶ 13. The question of whether a statutory scheme compels an award of attorney's fees requires statutory construction and thus is a matter of law that we review de novo. *Elkins v. Microsoft Corp.*, 174 Vt. 328, 330, 817 A.2d 9, 12 (2002) (decisions involving statutory construction subject

to nondeferential and plenary review). When a statute requires an award of attorney's fees, it is not within the trial court's discretion to determine whether to award such fees. *L'Esperance v. Benware*, 2003 VT 43, ¶ 21, 175 Vt. 292, 830 A.2d 675. The adequacy of a trial court's award of attorney's fees, however, depends on the unique facts of the underlying case. We accordingly afford a trial court's determination as to the amount of an award great discretion and will disturb it only if the court has abused that discretion. *Vastano v. Killington Valley Real Estate*, 2010 VT 12, ¶ 9, 187 Vt. 628, 996 A.2d 170 (mem.).

¶ 14. Vermont adheres to the American rule of attorney's fees, which instructs that, generally, parties must bear their own litigation costs regardless of the lawsuit's outcome. *DJ Painting, Inc. v. Baraw Enters., Inc.*, 172 Vt. 239, 246, 776 A.2d 413, 419 (2001). This rule does not apply, however, when a statute or contract directs otherwise. *Harsch Props., Inc. v. Nicholas*, 2007 VT 70, ¶ 11, 182 Vt. 196, 932 A.2d 1045. Here, both the statutory warranty of habitability and the Consumer Fraud Act include fee-shifting provisions superseding the general rule.[6] Section 4458 of Title 9 of the Vermont statutes authorizes a tenant to recover reasonable attorney's fees "[i]f the landlord fails to comply with the landlord's obligations for habitability." And the Consumer Fraud Act permits "[a]ny consumer who contracts for goods or services in reliance upon false or fraudulent rep-

resentations or practices" to "recover from the seller . . . reasonable attorney's fees." 9 V.S.A. § 2461(b). We have held previously that the statutory language of these sections entitles a tenant who proves a landlord's breach of the statutory warranty of habitability, in the case of 9 V.S.A. § 4458, or a Consumer Fraud Act violation, in the case of 9 V.S.A. § 2461(b), to an award of attorney's fees. *L'Esperance*, 2003 VT 43, ¶ 21 (Consumer Fraud Act "mandates that where a plaintiff has made a showing of fraud, the court will award reasonable attorney's fees"); *Bisson v. Ward*, 160 Vt. 343, 346, 628 A.2d 1256, 1259 (1993) ("[T]he statutory language of 9 V.S.A. § 4458 — tenant may recover — entitles tenants to attorney's fees where the landlord has breached the warranty of habitability.").

¶ 15. Landlords argue that tenants are not entitled to an award of attorney's fees because they have not "prevailed" in the litigation overall and have not prevailed on either statutory claim. This argument is without merit. In *Bisson*, we specifically held that a landlord's breach of the statutory warranty of habitability entitles tenants to attorney's fees. 160 Vt. at 346, 628 A.2d at 1259. The tenant in that case recovered $1,700, plus interest, after proving her landlord's breach. Here too the jury expressly found that landlords breached the statutory warranty of habitability and awarded tenants $4,929 in actual damages for this breach,[7] an amount exceeding the $1,700, plus interest, received by the tenant in *Bisson*. The instant case, then, squarely falls within our holding in *Bisson*.

---

[6] The residential lease also includes a fee-shifting provision, entitling landlords to reasonable attorney's fees incurred in connection with a violation of the lease agreement by tenants. Landlords rely exclusively on the lease provision in requesting an award of attorney's fees, whereas tenants rely exclusively on the two statutory provisions in their own request.

[7] The jury awarded $8,215 in actual damages to tenants for their claims of breach of lease and breach of warranty of habitability. The jury apportioned sixty percent of the damages to the breach-of-warranty-of-habitability claim and the remaining forty percent to the breach-of-lease claim.

¶ 16. We recognize that in *Bisson* the final judgment was for the tenant, whereas in this case the damages for breach of warranty offset only part of the landlords' back rent judgment. We do not view this distinction as determinative. The plain language of 9 V.S.A. § 4458(a) indicates that a tenant is entitled to reasonable attorney's fees "[i]f the landlord fails to comply with the landlord's obligations for habitability." The statute does not require a tenant to receive an overall net gain in the lawsuit — it requires only that tenants prove a breach of the warranty of habitability. Tenants have met this requirement.

¶ 17. For the same reason, we do not find determinative cases like *Farrar v. Hobby*, 506 U.S. 103 (1992), cited by landlords, which construe statutes that award attorney's fees to a prevailing party. See, e.g., 42 U.S.C. § 1988(b) ("[A] court, in its discretion, may allow the prevailing party . . . a reasonable attorney's fee . . . ."); 9 V.S.A. § 4007(c) (prompt payment act; establishing that the "substantially prevailing party . . . shall be awarded reasonable attorney's fees"). The plain language of § 4458(a) does not require a party to establish that it was "the prevailing party." Rather, it grants attorney's fees to a tenant when "the landlord fails to comply with the landlord's obligations for habitability." 9 V.S.A. § 4458(a). As noted above, tenants successfully established landlords' breach of the statutory warranty of habitability and therefore are entitled to attorney's fees under the statute.

¶ 18. Landlords further argue that tenants are not entitled to attorney's fees for the work in connection with the Consumer Fraud Act claim because the jury awarded no damages in connection with that claim. We note that the court structured the charge to the jury to leave the Consumer Fraud Act claim until last. Thus, it is more fair to describe the verdict as awarding no additional damages, beyond those awarded for breach of contract and breach of warranty, as a result of its finding of consumer fraud. This result is not surprising because there was a clear overlap between the damages elements claimed for breach of the lease, breach of warranty, and consumer fraud.

¶ 19. In any event, we do not reach landlords' argument. As the trial court recognized, the theories on which tenants prevailed involved essentially the same operative facts and were overlapping. The court could award attorney's fees for the breach of the warranty of habitability without the consumer-fraud claim. In such circumstances, the attorney's fee award is sufficiently supported by the jury's verdict that landlords violated the warranty of habitability. See *Elec. Man, Inc. v. Charos*, 2006 VT 16, ¶ 10, 179 Vt. 351, 895 A.2d 193 (attorney's fee award should not be apportioned based on recovery on each claim when claims at issue share common core of facts); *L'Esperance*, 2003 VT 43, ¶ 24 (affirming attorney's fee award for consumer-fraud claim, including time spent on alternative claims, when alternative claims arose out of same transaction).

¶ 20. Landlords next argue that the attorney's fee award is not "reasonable," as required by § 4458(a)(3), because it is out of proportion to the damages awarded to tenants. We rejected a similar argument recently in *Vastano*, 2010 VT 12, where the defendant contended that the trial court erred in awarding $55,012 in attorney's fees when the underlying damage award was a comparatively low $7,875.[8] We noted that "an attorney's fee

---

[8] In *Vastano*, the trial court granted an overall attorney's fee award of $74,988, comprised of $55,012 in accrued attorney's fees and $19,976 in prejudgment interest. The defendant challenged both portions of the award. We held that it was erroneous to include the prejudgment

award need not be directly 'proportionate' to a damage award," and held that the trial court did not abuse its discretion in fashioning the award. *Id.* ¶ 9. Here we are presented with a very similar situation, where tenants have been awarded $4,929 in damages for breach of warranty of habitability and the court has authorized an attorney's fee award of $18,975. The question, therefore, is not whether the attorney's fee award is proportional to the damages, but rather whether the fee award is reasonable given the demands of the case. See *Perez v. Travelers Ins. ex rel. Ames Dep't Stores, Inc.*, 2006 VT 123, ¶ 10, 181 Vt. 45, 915 A.2d 750 (setting forth criteria for determining reasonableness of attorney's fee award).

¶ 21. In determining the reasonableness of a fee award, courts must begin with the " 'lodestar figure,' . . . the number of hours reasonably expended on the case multiplied by a reasonable hourly rate." *L'Esperance*, 2003 VT 43, ¶ 22. The court may then adjust this amount upwards or downwards, depending on the circumstances of the case, including, among other factors, "the novelty of the legal issue, the experience of the attorney, and the results obtained in the litigation." *Id.* The post-trial motions court followed this framework in assessing the reasonableness of tenants' attorney's fees. In particular, it noted that the breach-of-warranty-of-habitability claim, like the breach-of-lease and consumer-fraud claims, was inherently more difficult than landlords' unpaid rent claim, and therefore tenants reasonably needed more time and effort

interest in the plaintiff's award and modified the trial court's judgment accordingly. *Id.* ¶ 10. We did not, however, reduce the accrued attorney's fee portion of the award, nor was our adjustment of the overall award due to concerns that the award was not in proportion to the damages in the underlying case. See *id.* ¶¶ 9-10.

to prepare for and prove their claims. It also noted that tenants' counsel represented six individuals, each of whom lived outside of Vermont, so counsel necessarily had to spend additional time communicating with each of them and attempting to coordinate with them. The court accordingly awarded tenants fifteen more hours for trial preparation and presentation, and five more hours for initial legal work, than it did to landlords. It is also noteworthy that tenants submitted an affidavit from a third-party attorney who attested that tenants' fee request was reasonable and that the court's award was actually 22.25 hours less than tenants requested. Landlords did not specifically refute this affidavit, nor did they offer their own expert to demonstrate that the fees were unreasonable. Last, we note that tenants' fee award was only twenty hours more than landlords' fee award, and in fact was nine hours *less* than landlords requested for their own fee award. Given all of these factors, we cannot conclude that tenants' fee award constitutes an abuse of discretion.

¶ 22. Landlords also challenge the post-trial motion court's downward adjustment of their own request for attorney's fees. Under the parties' lease agreement, landlords are entitled to recover from tenants "reasonable attorney's fees" incurred as a result of a breach by tenants. Landlords argue that they attained "excellent results" at trial in that they won a net judgment of $8,071.50, and that "[w]here a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee." *Hensley v. Eckerhart*, 461 U.S. 424, 435 (1983); accord *L'Esperance*, 2003 VT 43, ¶ 25 ("Where a plaintiff has achieved excellent results, although through the use of alternative legal grounds, the court's rejection of or failure to reach certain grounds is not a sufficient reason for reducing a fee." (quotation omitted)). This principle assumes, however, that the proffered fee "encom-

pass[es] all hours *reasonably expended* on the litigation." *Hensley*, 461 U.S. at 435 (emphasis added). When the fee includes hours that are not reasonably related to the litigation or redundant, it may be reduced accordingly. *Perez*, 2006 VT 123, ¶ 13. Applying the lodestar analysis, the post-trial motions court concluded that "much of the litigation, and discovery/motion work prior to [a particular point in the litigation] was *not* entirely productive, or useful to the court in moving the case to conclusion." (Emphasis added.) The court therefore reduced the requested fee award by twenty-nine hours. The court was in the best position to evaluate the reasonableness of legal fees and, as noted earlier, we accordingly allow the court "substantial discretion." *Perez*, 2006 VT 123, ¶ 8; see also *Burlington Free Press v. Univ. of Vt.*, 172 Vt. 303, 310, 779 A.2d 60, 66 (2001) (most important factor in reviewing attorney's fee award is discretion of trial judge); *Parker, Lamb & Ankuda, P.C. v. Krupinsky*, 146 Vt. 304, 307, 503 A.2d 531, 533 (1985) (trial courts have wide latitude in determining reasonable value of legal services; this Court will only alter fee award when strong evidence demonstrates award's excessiveness or inadequacy). We find no abuse of this discretion here.[9]

¶ 23. Finally, tenants' brief raises a number of claims of error regarding the

---

[9] Landlords additionally allege that "by process of elimination, it is possible to determine what types of charges [the court] disallowed," and go on to speculate as to specific charges that were allegedly culled from the fee request. Landlords then argue that, assuming the veracity of their speculation, the court's decisions as to what charges to allow and disallow were arbitrary and unfair. We disagree that it is *possible to extract from the court's decision* specific charges that were disallowed, and we decline to address landlords' arguments based on such speculation.

court's decision. Tenants, however, did not cross-appeal the court's decision, and, therefore, we lack jurisdiction to reach the merits of their claims. *Huddleston v. Univ. of Vt.*, 168 Vt. 249, 256, 719 A.2d 415, 419-20 (1998).

*Affirmed.*

Motion for reargument denied September 27, 2010.