*Note: Decisions of a three-justice panel are not to be considered as precedent before any tribunal.*

## ENTRY ORDER

SUPREME COURT DOCKET NO. 2012-421

JUNE TERM, 2013

| | | |
|---|---|---|
| Kaitlin Barry | } | APPEALED FROM: |
| | } | |
| | } | Superior Court, Chittenden Unit, |
| v. | } | Civil Division |
| | } | |
| | } | |
| Chris C. Khamnei | } | DOCKET NO. S0433-11 CnC |

Trial Judge: Geoffrey W. Crawford

In the above-entitled cause, the Clerk will enter:

Tenant appeals from the trial court's ruling on a motion to alter and amend, following a bench trial, in this landlord-tenant dispute. She argues that the court erred in finding landlord's explanation for withholding her security deposit facially sufficient under 9 V.S.A. § 4461. She also asserts that the court erred in finding that landlord did not breach the warranty of habitability, thereby denying her the right to recover costs and attorney's fees under 9 V.S.A. § 4458. We affirm.

Following a bench trial, the court made the following findings. Tenant rented an apartment from landlord in September 2010 for one year at a monthly rent of $700 plus heat and electricity. She executed a written lease and provided landlord with a $700 security deposit. Later that month, tenant advised landlord that she believed that her rent included heat, as had been stated in an online advertisement. Landlord acknowledged that tenant was correct about the online ad, and he agreed to reduce the rent to $650 per month, not including heat. Landlord indicated that tenant should "change the lease to $650 and sign." Tenant indicated that she would deliver the changed lease to landlord, but she never did so. Nonetheless, tenant paid $650 per month between October 2010 and January 2011, and landlord accepted the reduced rent without objection.

During tenant's tenancy, landlord's brother managed the property. Shortly after tenant moved in, tenant's boyfriend began living with her. Tenant apprised the apartment manager of this, and the manager did not object. As time progressed, tenant found the apartment too cold. The unit was heated by a gas heater. Tenant borrowed a space heater from landlord and purchased a second space heater. She also bought a fan to improve circulation of warm air through the apartment. In mid-January 2011, tenant complained about the heat to the Code Enforcement Office of the City of Burlington. Its investigation revealed apartment temperatures in the 50s. The apartment was condemned for several days and landlord paid for her to stay at a local hotel. During this period, the Code Enforcement Office measured temperatures in the apartment ranging from the low 50s to the 80s. Neither tenant nor landlord could explain these

fluctuations. The court rejected landlord's assertion that tenant purposely turned off the heat to sabotage the Code Enforcement Office's investigation.

Not long after the condemnation period, the pipes in the bathroom froze and fractured. The court found no credible explanation for the drop in temperature inside the apartment. Landlord repaired the pipes. During her tenancy, tenant was concerned that landlord or his representatives were entering her apartment without notice or permission. On one occasion, she found that the space heaters had been moved from her unit to the basement. Another time, she found her circulating fan nailed to the wall and broken. These entries into her apartment made her uncomfortable. There as no evidence as to who came into the apartment.

Tenant moved out on January 31, 2011. Within a few days, landlord sent her an email explaining his reasons for withholding $350 from her security deposit. Landlord stated as follows:

> Included is copy of lease provided to you in September. Needless to say, I was upset with your dishonesty during your tenancy. First, according to the lease it was $700 per month . . . we lowered your rent to $650 based on the fact that [the apartment manager] supposedly told you that heat was included. He was clear to you that utilities were not included except water, hot water and internet. Second, we asked you to change the lease and initial changes and sign the [sic] we would provide a copy which you did not do. Third, you tried to renegotiate again to have heat included AFTER we were kind to offer a gesture to reduce the rent. Fourth, you called the city after repeatedly turning the heat to low to show how unsuitable the apartment was. Fifth, when the city was conducting measurements, you went into the apartment and turned the heat to low to continue the dishonesty. Sixth, you were in violation of your lease by allowing your boyfriend to live in the apartment without permission . . . this is usually a $50 per month charge for extra utilities that I pay for and other usage in suitable apartments only. I would not have approved your apartment as suitable for two people.

> Based on these circumstances, I am only willing to abide by the original lease in September which clearly stated $700 per month. You occupied the apartment for five months. You had your boyfriend living there at least three of those five months. You paid $700 for one month and $650 for four.

> Your security deposit was $700. Your rent shortage is $200. Your extra utility charge for your boyfriend living there is $150.

> You are being sent a check for $350.

The court found that this email was sent to tenant within fourteen days as required by 9 V.S.A. § 4461.

Based on these findings, the court turned to tenant's claims. The court agreed with tenant that she was entitled to the return of her full security deposit. It found that the rent had been adjusted to bring it into conformity with landlord's advertised price. Landlord had accepted the reduced rent for four months without complaint and without insisting on a written amendment to the lease. Landlord then tried to undo his prior agreement. The court found that, having agreed to reduce the rent and having accepted the reduced amounts, landlord was bound by his own agreement and he had no basis for withholding unpaid rent.

The court also found that landlord wrongfully withheld $150 based on a $50 monthly charge for an additional occupant. The court credited tenant's testimony that she had introduced her boyfriend to the apartment manager and explained that he would be living with her. The apartment manager did not object to the boyfriend's presence or impose any additional monthly charge. Instead, he acquiesced in the arrangement. There was no provision in the lease for an extra charge for an additional resident. Given this, landlord had no basis to withhold $150. The court thus entered judgment in tenant's favor for $350.

The court turned next to tenant's claim that landlord breached the warranty of habitability through unauthorized entries and lack of proper heat. Tenant sought nominal damages for both claims. The court found strong evidence to infer that someone employed by landlord had entered the apartment without permission, and it awarded her nominal damages of $1 on this claim. The court also awarded tenant $1 in nominal damages on the heating claim. The court found strong evidence that the temperature in the apartment fell below reasonable levels during January 2011. Why this happened was unknown as the heating system was relatively new and capable of maintaining very high temperatures. As indicated above, the court found no credible evidence to support landlord's assertion that tenant tampered with the heater to build a case against him.

In its order, the court explained that the next step was for tenant to file an attorney's fees claim. It indicated that the fees must bear a reasonable relationship to the time spent on the matter and also to the amount at issue. The court noted that the amount at issue had never been great—essentially $350—and that landlord had long been willing to pay that amount. The court found that any award in excess of the amount actually in dispute would require considerable justification.

Tenant subsequently filed a motion to alter or amend the judgment and a request for attorney's fees and costs. Tenant indicated that she was entitled to recover attorney's fees under 9 V.S.A. § 4461(e) because landlord willfully withheld her security deposit and under 9 V.S.A. § 4458(3) based on landlord's breach of the warranty of habitability. Tenant indicated that she had incurred attorney's fees and taxable costs of $7696.76. In making her request, tenant noted that this Court had rejected the notion that an award of attorney's fees must bear a reasonable relationship to the amount at issue. See Kwon v. Eaton, 2010 VT 73, ¶ 20, 188 Vt. 623. In her motion to alter, tenant asked the court to specifically find that landlord had willfully withheld her security deposit. Landlord responded to this motion and he also filed a motion to alter. He asked the court to find that he lawfully entered tenant's apartment and that he repaired the heating

3

system within a reasonable period of time. He also asserted that he did not willfully withhold tenant's security deposit.

In ruling on these motions, the court noted that the underlying difficulty with this case was that it had been driven from the beginning by tenant's claim for attorney's fees. The amount due to tenant had always been modest. While the relatively small scale of the dispute did not preclude an award of attorney's fees if the statutory requirements were met, it did raise concerns about the fairness and reasonableness of the claim. The court found it unnecessary to reach this issue, however, because it concluded that tenant's habitability claim and her security deposit claim did not meet the statutory prerequisites for an attorney's fee award.

As to the heating issue, the court found that landlord made repairs within a reasonable period of time as required by 9 V.S.A. § 4458(a). It explained that the heating system was relatively new and that landlord had the problem investigated by the furnace company immediately. In the meantime, landlord paid for two nights' lodging at a motel for tenant. The court found this response appropriate and concluded that it did not support an award of attorney's fees under the statute.

With respect to the unauthorized entry into tenant's apartment, the court agreed that the entry should not have occurred. See 9 V.S.A. § 4460 (providing circumstances under which landlord may enter rented premises without permission). The court found, however, that the law did not specifically provide for attorney's fees when 9 V.S.A. § 4460 was breached, and the court did not see the unauthorized entry as a breach of the warranty of habitability set forth in 9 V.S.A. § 4457. See Hilder v. St. Peter, 144 Vt. 150, 159-61 (1984) (holding that implied warranty of habitability requires that "landlord will deliver over and maintain, throughout the period of the tenancy, premises that are safe, clean and fit for human habitation").

The court observed that, in ruling on the motion for attorney's fees, it had become clear that the underlying breach of warranty of habitability claim had not been proved at trial. While the damages sought were nominal, the issue was not without consequences. The court thus amended its findings and conclusions to remove the entry of judgment in tenant's favor on the warranty of habitability claims. It reiterated that a loss of heat, or significant fluctuations in temperature, including drops below safe levels, which was followed by appropriate attempts to repair the system, did not reach the level of a breach of the warranty. Similarly, unauthorized entry was covered by a separate statutory provision and, at least on this record, did not support a warranty claim.

Turning to the security deposit claim, the court found that landlord had complied with the relevant statute, 9 V.S.A. § 4461(e). He provided a statement to tenant within fourteen days explaining why he was withholding $350, and, at least on its face, the statement listed deductions permissible under § 4461(b): nonpayment of rent and nonpayment of utility charges. That landlord's explanation for the deductions ultimately failed to satisfy the court did not entitle tenant to recover attorney's fees. The court found that there might be cases where the written explanation was so spurious or perfunctory that it did not satisfy the statute, but this was not such a case. Tenant appealed from the court's order.

4

Tenant first argues that the court erred in concluding that landlord provided a facially sufficient explanation for withholding part of her security deposit. She addresses each of the reasons offered by landlord and argues that each fail under the statute. In support of her claims, she points to evidence adduced at trial. She maintains that landlord knew at the time he wrote his email that he had no right to withhold the security deposit for any of the reasons he advanced.

Our review of the court's order is deferential. We uphold the court's findings unless clearly erroneous, meaning there is no credible evidence in the record to support them. V.R.C.P. 52(a)(2); Mullin v. Phelps, 162 Vt. 250, 260 (1994). We will uphold the court's conclusions where supported by the findings. Bisson v. Ward, 160 Vt. 343, 350 (1993). It is for the trial court to "determine the credibility of witnesses and weigh the persuasive effect of the evidence." Bruntaeger v. Zeller, 147 Vt. 247, 252 (1986).

The trial court's decision is supported by the record here. Pursuant to 9 V.S.A. § 4461(b), a landlord may retain all or a portion of the security deposit for certain specified reasons, including nonpayment of rent and nonpayment of utility or other charges. The landlord must provide the tenant with a written statement itemizing any deductions from the security deposit within fourteen days of the date that the tenant vacated the dwelling unit. Id. § 4461(c). "If a landlord fails to return the security deposit with a statement within 14 days, the landlord forfeits the right to withhold any portion of the security deposit. If the failure is willful, the landlord shall be liable for double the amount wrongfully withheld, plus reasonable attorney's fees and costs." Id. § 4461(e).

As set forth above, landlord informed tenant in writing that he was withholding a portion of the security deposit to cover unpaid rent and costs associated with having another tenant in the unit. The court did not err in finding these reasons facially valid. As to the rent issue, the landlord testified at trial that he relied on the terms of the lease that tenant had signed when she first moved in. He maintained that tenant was not entitled to the lowered rent because she had failed to provide him with a copy of an amended lease. Landlord also pointed to a provision in the lease that he believed supported his position that only one person was allowed to reside in the apartment. It was not wholly unreasonable for landlord to deduct $50 in additional monthly costs associated with having a second tenant in the unit. We agree with the trial court that, although landlord's reasons were not ultimately persuasive, they were sufficient for purposes of the statute.

Tenant next asserts that the court erred in finding that landlord did not violate the warranty of habitability by failing to provide adequate heat. She maintains that the facts do not support the court's conclusion on this issue. She points to her own testimony that she notified landlord multiple times about the heat issue and that he failed to timely fix the problem.

Again, the trial court concluded otherwise and its decision is supported by the record. The trial court found that landlord timely responded to the heating issue. It explained that the heating system was relatively new and that no explanation could be found for the fluctuating temperatures in the apartment. Landlord repaired the system promptly and covered the costs of tenant's two-day hotel stay. The court similarly found no plausible explanation for the drop in temperature that caused the pipes to freeze shortly after tenant's hotel stay. Landlord promptly repaired the damaged pipes. While tenant argues that the heating problem was an ongoing

5

problem that landlord neglected, the court made no such finding. It is evident that tenant disagrees with the court's conclusion, but she fails to show that the court's findings are clearly erroneous or that its conclusion is unsupported by the findings.

Finally, given our conclusions above, we need not consider tenant's assertion that the trial court erred in its discussion of the amount of attorney's fees recoverable under the relevant statutes.

Affirmed.

BY THE COURT:

_____
Paul L. Reiber, Chief Justice

_____
John A. Dooley, Associate Justice

_____
Marilyn S. Skoglund, Associate Justice