Filed 09/02/22

STATE OF VERMONT

**SUPERIOR COURT**
**ADDISON UNIT**

**CIVIL DIVISION**
**Docket No. 167-10-17 Ancv**

**JUNE MONCRIEF and NICHOLAS TONZOLA,**
    **Plaintiffs**

v.

**GERALYN McBRIDE and DOUGLAS TOLLES,**
    **Defendants**

### DETERMINATION OF ATTORNEYS' FEES

In a Decision issued July 21, 2022 resulting from a court trial, the court determined that Plaintiffs are entitled to $15,000 in damages based on a claim of unlawful mischief and a permanent injunction. Plaintiffs are therefore entitled to attorneys' fees attributable to the unlawful mischief claim pursuant to 13 V.S.A. §3701 (f).

Rule 54 (d) (2) of the Vermont Rules of Civil Procedure set forth the procedures related to the allowance of attorneys' fees. "The court shall, insofar as possible, resolve issues relating to fees without extensive evidentiary hearings. . ." *Id.* at Rule 54 (d)(2)(D). "The court shall find the facts and state its conclusions of law as provided in Rule 52(a), and a separate judgment shall be entered as provided in Rule 58." *Id.* at Rule 54 (d)(2)(C).

In this case, the court heard some evidence on attorneys' fees at the court trial, but also provided an opportunity for Plaintiffs to supplement the evidence with an affidavit and supporting documentation after the trial in accordance with Rule 54 (d)(2)(B), and provided the Defendants the opportunity to file any objection and/or request a hearing. Plaintiffs have filed numerous documents and a memorandum. Defendants have filed an objection and declined to request a hearing.

The claims in the case were bifurcated with a first court trial in September of 2019 on Plaintiffs' claim to quiet title to the septic easement on Defendants' land. This resulted in a 51 page Decision in February of 2020 and a 31 page amended Decision in May of 2020 in which Plaintiffs were awarded title to the septic easement, its scope was defined, and Defendants were enjoined from engaging in any activities in the easement area except for walking pending the final decision. The final court trial on remaining claims was held over 5 days in March of 2022.

Plaintiffs seek $22,939.18 for attorney work on the quiet title claim, $81,253 for other attorney work done prior to July 2021 on the unlawful mischief claim, and $55,868.76 for attorney work on the unlawful mischief claim after July of 2021 for a total of $160,060.94.

1

Defendants have raised several objections and argue that attorneys' fees, if awarded, should be limited to $1,385.83 which, they argue, is the only amount established by evidence.

"In calculating [a statutory] award of attorney's fees, the court looks to the 'most useful starting point,' the 'lodestar figure,' by determining the number of hours reasonably expended on the case multiplied by a reasonable hourly rate, and then adjusting that fee upward or downward based on various factors. These factors include, among others, the novelty of the legal issue, the experience of the attorney, and the results obtained in the litigation." *L'Esperance v. Benware*, 2003 VT 43, ¶ 22, 175 Vt. 292 (citations omitted).

Plaintiffs' attorneys, Richard Cassidy and Michael T. Russell, billed at the rate of $150 per hour.[1] There is expert evidence that their rates were reasonable and there is no contradictory evidence. The court accepts the hourly rates at which time was billed. Defendants' objections are that there is insufficient admissible evidence to support the work done, that there is no expert testimony to support the allocation of time attributable to the proportion of the unlawful mischief claim that was successful, that the amount sought is out of proportion to the recovery in the case, and that the use of two attorneys resulted in excessive fees.

*Scope of Work for Attorneys' Fees*

The successful unlawful mischief claim was one of several claims and counterclaims asserted by the parties against each other. Attorneys' fees are permitted in this case only for the successful unlawful mischief claim. 13 V.S.A. §3701 (f). Therefore, it is necessary for the court to determine the amount of fees attributable only to that successful claim.

When Plaintiffs filed this suit, Defendants' title to their land was encumbered by an easement for a replacement septic system for the benefit of Plaintiffs but Defendants had refused to acknowledge its validity. Defendants had excavated an Orangeburg pipe buried across the easement area without informing Plaintiffs, pursued permits for an access road and built the access road thereby disturbing the soils and adding gravel, and caused heavy equipment to drive over the road thereby repeatedly compacting the soils. They had damaged the easement area, compromising it for use for its express purpose, and they sought to proceed with road use that would further damage the area for easement purposes. Plaintiffs proved both that they were entitled to enforcement of the easement rights in their deed and their unlawful mischief claim.

The case was not a simple one, however. The effect of the Orangeburg pipe that had been buried under both parties' properties was unknown when the case started and had to be investigated, including whether or not it carried septic effluent and from what source, and there were multiple other issues related to groundwater and drainage in addition to septic issues. Plaintiffs had nine claims against Defendants, and Defendants pursued seven claims against Plaintiffs. Expert investigation and advice was involved on both sides. To some degree, there was a common set of facts related to several of the claims, but there were also many facts that were unrelated to the successful claim.

---

[1] The billing rates were higher but were reduced for invoice purposes due in part to the fact that two attorneys worked together on the case.

Chief among the hours of work spent on the case by Plaintiffs' attorneys was their unsuccessful effort to prove one aspect of the unlawful mischief claim. The unlawful mischief cause of action had two aspects. One was that Plaintiffs held a legally enforceable easement for septic replacement purposes and that Defendants had damaged the soils in the easement area to an extent that compromised the area for its intended use. That was the successful portion of the claim. The second was that Defendants had caused the septic system on the Plaintiffs' own land to fail, resulting in the need to design and install a wholly new septic system. In this portion of the claim, Plaintiffs sought damages in the form of the full cost of their replacement system. That portion of the claim was not successful.

Thus, the scope of the attorneys' fees to be awarded to Plaintiffs are limited first to only the unlawful mischief claim and not the many other claims in the case (except to the extent that there is a common set of facts), and second to that portion of the unlawful mischief claim that was successful, and not to the attempt to prove that Defendants caused Plaintiffs' septic system to fail. This calls for the court make a fair allocation of attorney work performed. Plaintiffs' attorneys have purported to seek fees only for the unlawful mischief claim, but they have not clearly differentiated between the successful and unsuccessful aspects of the unlawful mischief cause of action.

Moreover, at issue between the parties is whether the Plaintiffs' attorneys' work on the quiet title portion of the case is recoverable. The court concludes that it is. The quiet title action was a prerequisite to the unlawful mischief claim due to Defendants' denial or minimization of the Plaintiffs' easement rights altogether. Thus, proving the property right was a necessary part of the unlawful mischief claim. While the quiet title issue was not novel, Defendants' persistent resistance to recognizing the validity of the easement rights necessitated extensive attorney work on behalf of the Plaintiffs not only to validate the easement but also to delineate its scope. The need for recognition of the easement and definition of its scope was caused by Defendants and the two lengthy decisions of Judge Arms in the first court trial show that extensive attorney work was required.

Defendants argue that the attorneys' fees sought by Plaintiffs are out of proportion to the size of the dispute and the outcome of the case, and point to the fact that compensatory damages are only $15,000. However, it is not the size of the financial award that matters, but whether or not the fees incurred were proportional to the demands of the case. *L'Esperance v. Benware,* 2003 VT 43, ¶¶ 22, 24; *Kwon v. Eaton,* 2010 VT 73, ¶20. Attorney fees may be awarded even where actual damages are minimal. "[T]he Legislature has explicitly authorized civil unlawful mischief claims for very small amounts of money where the attorney's fees and costs are almost certain to greatly exceed the amount of damages recovered." *Evans v. Cote,* 2014 VT 104, ¶26. In this case, the evidence is clear that if Plaintiffs had not filed suit, Defendants would have used the easement area for a road without regard to the property rights of Plaintiffs and their use would have resulted in further damage to the capacity of the land to be used for the purpose of the easement. The statutory right to attorneys' fees serves the policy purpose of protecting interests in property rights regardless of the financial measure of the extent of physical damage.

*Evidentiary Support for Amount to be Awarded*

Having described the scope of recoverable attorneys' fees in general terms, the next step is to determine what amounts within the defined recoverable scope have been proven with sufficient clarity to make a reasonable allocation. As required by Rule 54 (d)(2)(C), the court is obliged to engage in factfinding.

The evidence consists of testimony at trial from Plaintiffs' expert attorney James A. Dumont, a post-trial affidavit of Attorney Dumont, and a post-trial affidavit of Plaintiff's Attorney Michael T. Russell. A number of other documents were filed, many of which were referred to in the affidavits. Also submitted were some redacted attorney invoices.

Defendants argue that Plaintiffs' evidence is not sufficiently supported by expert testimony because Attorney Dumont did not perform his own analysis to differentiate between work related to the unlawful mischief claim and work on other claims, but rather relied on Attorney Russell who has a clear interest in the outcome. This is not necessarily fatal. Attorney Russell is the most person most likely (along with Attorney Cassidy) to recognize from billing records, case records, and memory what portions of the work were done on what aspects of the case. Thus his evidence meets the standard of providing relevant evidence. The court does not accept it as expert opinion evidence. However, as noted above, the allocation made by Attorney Russell does not provide sufficient information differentiating the successful portion of the unlawful mischief claim from the unsuccessful portion, and the unsuccessful portion was clearly more complex and called for more attorney time and work with experts and technical information. The court has to take this into account in evaluating Attorney Russell's figures.

The court has spent considerable time seeking to understand and evaluate the information provided and will describe its evaluation of the facts using Plaintiffs' three phases: quiet title work, other work prior to July 2021, and work since July 2021.

Quiet title work. While, as stated above, the court considers that in this case it would be appropriate to include the work needed to quiet title as necessary work to prove the successful unlawful mischief claim since Defendants challenged Plaintiffs' easement rights, the court has studied the material in support of the claim for $22,939.18 and cannot conclude that the amount is sufficiently supported. While there is a document that lists amount of attorney time and billing rate, there are no time and billing records to review. There is a separate list of the tasks performed which is generalized and unrelated to the specific segments of time billed, and includes references to topics and persons and issues that the court is unable to connect to the successful unlawful mischief claim. Therefore, although work was clearly performed on the portion of the claim for which fees are recoverable, the evidence is insufficient to support a reasonably ascertainable specific amount of attorneys' fees.

Other work done prior to July 2021. Plaintiffs rely on Attorney Dumont's trial testimony and a document authored by Plaintiffs' attorneys in July of 2021 that disclosed Attorney Dumont's expert opinion at that time, which was that reasonable fees to that date for the unlawful mischief claim were $81,253.70. There are two problems with this figure that make the court unable to adopt it in full. First is that it represents a conclusory opinion without

4

documentation to support it. Attorney Dumont testified what he reviewed in reaching that figure and no doubt he did a responsible review, but the underlying work and time records are unavailable to the court, leaving the court with simply a number that constitutes an opinion that the court is unable to evaluate in relation to time and billing records. The second problem is that since he accepted Attorney Russell's allocation analysis, and the court has determined that that analysis does not sufficiently differentiate between the successful and unsuccessful aspects of the unlawful mischief claim, it appears clear that a portion of the work for which $81,253.70 was billed was for the unsuccessful part of the unlawful mischief claim, which was the more complex part. Thus the court cannot accept the figure as accurate, and has no information upon which to attempt its own analysis to break the total down to a supportable figure.

The court is faced with the dilemma of not having a sound evidentiary basis for determining a specific amount of attorneys' fees for work done on the successful portion of the unlawful mischief claim from the beginning of the case to July of 2021. On the other hand, there is sufficient evidence to show that a considerable amount of work was done, and produced a successful result, so the court is unwilling to conclude that there is a complete lack of proof. The total requested for the quiet title work and other work to July 2021 is $22,939.18 + $81,253.70 = $104,192. The court is obliged to simply use its judgment and finds that it is reasonable to conclude that at least 40% of this total is attributable to the successful portion of the unlawful mischief claim. That amount is $41,676.80, rounded to $41,700.

Work since July 2021. At trial, Attorney Dumont testified that he added up the invoices from subsequent work and allocated half to the unlawful mischief claim, resulting in an additional figure of $34,629.50 to March 9, 2022, which was midway during the trial. Attorney Russell seeks $55,868.76 for work to the conclusions of the case. For the reasons stated above, the court finds that both of those figures overstate attorneys' fees reasonably related to the successful portion of the unlawful mischief claim.

The court was able to scrutinize the redacted invoices from both attorneys' law firms for this period, which were submitted. The court examined each entry, taking into account its own familiarity with the claims and issues on the basis of having conducted the trial, and finds that an amount that fairly represents the portion of fees related to the successful portion of the unlawful mischief claim after July of 2021 is $42,000.

As a consequence of the above evaluation of the evidence, the court concludes that, based on available evidence, a reasonable amount of attorneys' fees is $41,700 + $42,000 = $83,700.

Therefore, pursuant to Rule 54 (d)(2)(C), Plaintiffs' attorneys shall prepare a separate judgment for an award of $83,700 in attorneys' fees to Plaintiffs.

Electronically signed pursuant to V.R.E.F. 9(d) on September 2, 2022 at 1:05 PM.

Mary Miles Teachout
Superior Court Judge

5