VERMONT SUPREME COURT
109 State Street
Montpelier VT 05609-0801
802-828-4774
www.vermontjudiciary.org



Case No.    24-AP-260

*Note: In the case title, an asterisk (\*) indicates an appellant and a double asterisk (\*\*) indicates a cross-appellant. Decisions of a three-justice panel are not to be considered as precedent before any tribunal.*

## ENTRY ORDER

MAY TERM,   2025

| | |
|---|---|
| Bourne's Inc. d/b/a v. Emmanuel Lemelson\* | } APPEALED FROM: |
| | } |
| | } Superior Court, Lamoille Unit, |
| | }  Civil Division |
| | } CASE NO. 59-5-20 Lecv |
| | Trial Judge: Daniel P. Richardson |

In the above-entitled cause, the Clerk will enter:

Defendant appeals the civil division's judgment in favor of plaintiff. We affirm.

In May 2020, plaintiff filed this action to collect amounts owed for heating oil and propane it delivered to defendant. Following a hearing in May 2023,[\*] the court issued an order with the following findings. In July 2016, defendant contracted with plaintiff to provide heating oil to one of the buildings on defendant's property in Stowe and propane to a pool located on the same property. Defendant signed an "Application for Fuel Delivery and Service," which stated that defendant was to pay all invoices within thirty days, a 1.5% finance charge would be added to unpaid balances, and plaintiff was entitled to all reasonable collection costs including attorney's fees.

In February 2017, defendant added a second propane account for a chapel that he constructed on his property. Plaintiff did not require defendant to fill out a new application, instead merely noting on the original application that it was adding a second propane account.

For the next three years, plaintiff regularly supplied heating oil and propane to defendant's property. Defendant carried a balance on each of the three accounts for nearly every month that they were active. Plaintiff applied a 1.5% finance charge every month on any outstanding balance on each account. The court found that the parties' agreement contemplated that plaintiff would apply the finance charge to each account, the finance charges did not violate

---

[\*] Defendant included the transcript of the May 2023 bench trial in his printed case. He did not order it in accordance with Vermont Rule of Appellate Procedure 10(b). However, since plaintiff did not object, we consider it to be a part of the record on appeal.

any regulatory provisions governing propane sales, and defendant never objected that the finance charges were outside the scope of the parties' agreement during those three years.

In June 2019, plaintiff became concerned with the large balances defendant was carrying and decided to end defendant's credit and put future deliveries on a cash-in-advance and call-for status. Defendant found this unacceptable and terminated his accounts with plaintiff as of January 2020. At that time, defendant owed $825.94 on the pool propane account, $4935.42 on the home heating-oil account, and $933.61 on the chapel propane account.

Plaintiff owned the propane tanks used by defendant. Ordinarily, when a customer terminates a contract with a supplier, the supplier will remove the tanks. However, when the tanks are underground, as defendant's were, it is a common industry practice for suppliers to trade tanks with the customer's new supplier. Plaintiff attempted to learn the name of defendant's new propane provider, but defendant refused to disclose it. In February 2020, defendant formally requested that plaintiff remove the tanks. Plaintiff communicated that it would be unable to do so until April 2020, when the weather would allow for excavation. Defendant agreed to this date. He also told plaintiff that its agents were not allowed to enter his property until further notice. The COVID-19 pandemic caused unexpected delays and by June 2020, the tanks were still on defendant's property. When plaintiff was unable to comply with defendant's June 17 demand that plaintiff remove the tanks by the following day, defendant had one of the tanks removed and placed it at the front of his property where plaintiff later collected it. The parties continued to disagree about the second and third tanks, and in October 2020 defendant excavated those as well. The court concluded that neither party acted in bad faith in the process of removing the tanks, although their relationship was acrimonious.

The court concluded that defendant owed a total of $9450.82 for the three accounts as of June 2023. It found that he was entitled to an offset of the finance charges accrued from April to November 2020, when the tanks remained on defendant's property after plaintiff promised to remove them. This reduced the judgment to $8747.85. The court rejected defendant's arguments that plaintiff violated the Vermont Consumer Fraud Rule regarding propane. See Consumer Fraud Rule, Code of Vt. Rules 06 031 011 [hereinafter CF 111], http://www.lexisnexis.com/hottopics/codeofvtrules. It concluded that he was not entitled to any penalties under that rule or the Vermont Consumer Protection Act (VCPA). It found that plaintiff was entitled to attorney's fees under the terms of the parties' agreement.

Defendant moved to alter or amend the judgment, arguing that he was not subject to the terms of the 2016 agreement because he did not fill out separate applications for each of his accounts. He argued that he was entitled to a judgment against plaintiff for violating the VCPA and CF 111 for failing to promptly remove the tanks or provide a refund for the unused propane. He also argued that he was entitled to attorney's fees for consumer fraud and breach of the implied covenant of good faith and fair dealing. The court denied the motion. It explained that the evidence showed that the terms of the agreement governed all of defendant's accounts; the CF 111 provision requiring removal of a propane tank within twenty to thirty days did not apply when the tank could not be removed due to weather or issues of access; defendant had been credited for the unused propane as part of the judgment; and defendant had not prevailed on his counterclaims and was therefore not entitled to attorney's fees.

Following a hearing in May 2024, the court awarded plaintiff $39,056 in attorney's fees and $6694 in costs. This appeal followed.

Defendant first argues that the evidence does not support the court's findings that: the agreement he signed in 2016 applied to all three accounts; he did not object to the finance charges prior to 2020; unused propane credits or credit for the tanks were applied to the account; and plaintiff did not act in bad faith in failing to promptly remove the tanks.

"Our standard of review of a trial court's findings made following a bench trial is limited." Soon Kwon v. Edson, 2019 VT 59, ¶ 23, 210 Vt. 557. "We review factual findings for clear error and will not disturb a finding even if it is contradicted by substantial evidence, unless there is no credible evidence to support the finding." Hirchak v. Hirchak, 2024 VT 81, ¶ 15 (quotation omitted). "Where the trial court has applied the proper legal standard, we will uphold its conclusions of law if reasonably supported by its findings." Highgate Assocs., Ltd. v. Merryfield, 157 Vt. 313, 315-16 (1991).

The record supports the court's finding that the 2016 application for service applied to all of defendant's accounts. Plaintiff's CEO and customer service manager both testified that plaintiff's standard practice is to use one application for all of a customer's accounts, and that the company does not ask customers to fill out a separate application for every delivery point. Plaintiff opened two accounts on the same day using the 2016 application. The application contained standard terms and conditions that apply to all customers. Defendant's account statements showed that the finance charges were routinely applied to all three accounts beginning in 2016. There was no evidence that defendant contested the applicability of finance charges to the heating oil and chapel accounts until after he terminated the contract.

Defendant argues that he testified that "during the prior year," he "consistently asked for statements and invoices to verify" the finance charges because "I need to understand where these charges are coming from." These statements do not indicate that he disagreed with or refused to pay the charges on the ground that they were not included in the contract. Similarly, defendant's testimony that plaintiff's representatives were apologetic about the finance fees in emails does not support his interpretation of the contract. He did not provide any exhibits to support his assertion that they acceded to his interpretation. Although he testified that he did not understand that he would be responsible for finance charges or attorney's fees on the fuel oil or chapel accounts and that plaintiff's use of a single contract was "absurd," the court was not required to credit this self-serving testimony. See State v. Young, 2010 VT 97, ¶ 9, 189 Vt. 37 ("When testimony conflicts, we will not disturb the trial court's decision to credit a particular witness absent some compelling indication of error, for it is within the province of the trial court to assess witness credibility and the weight of the evidence." (citation omitted)).

The court similarly did not err in finding that plaintiff applied unused propane credits to defendant's account. Plaintiff's customer service representative testified that when the tanks were removed in June and October 2020, plaintiff pumped out the remaining propane and credited defendant's account with the corresponding amounts. Plaintiff notified defendant of the credits in a letter to his attorney. The statements generated in January 2020 did not reflect these credits because the amounts had not yet been determined at that point, but the court's calculation of defendant's debt incorporates these credits. As the court noted, defendant presented no evidence to contradict these findings.

Defendant also claims that the court should have found that plaintiff acted in bad faith by unnecessarily delaying the removal of the tanks and forcing him to remove them at his own expense. Defendant points to his testimony that the tanks were too old to be transferred and that

his new provider told him that they could not be used, arguing that this proves plaintiff was acting in bad faith. The court evidently gave this opinion and hearsay testimony little weight, as it was entitled to do. The record supports the court's findings recited above and its conclusion that plaintiff's conduct during the tank-removal process was reasonable and not done in bad faith. The existence of conflicting evidence does not mean that the findings were clearly erroneous. Young, 2010 VT 97, ¶ 9.

Next, defendant claims that the court erred in concluding that plaintiff did not violate CF 111 in failing to remove the tanks. CF 111 regulates propane sales and was promulgated by the Attorney General pursuant to 9 V.S.A. § 2461b. CF 111.15(a) provides:

> When a seller disconnects or terminates service to a consumer, it shall, at the consumer's request, remove any storage tank that it owns from the consumer's premises by the latest of the following dates:
>
> (1) 20 days from the disconnection or termination or 30 days in the case of an underground tank;
>
> (2) 20 days from the consumer's request or 30 days in the case of an underground tank; the request must be in writing if the tank was disconnected by someone other than the seller;
>
> (3) in the case of a cash consumer, 20 days from receipt of payment of tank removal fees allowed under section 111.09; or
>
> (4) as soon as the weather and access to the tank allow.

The record supports the court's conclusion that plaintiff did not violate the above provision. Although plaintiff did not remove the tanks within thirty days of defendant's February 2020 request, plaintiff provided evidence that weather and access issues prevented it from doing so until June and October, respectively. We therefore affirm the court's conclusion. See Highgate Assocs., Ltd., 157 Vt. at 315-16 (explaining that this Court will affirm lower court's legal conclusions if supported by findings).

Defendant also argues that plaintiff violated CF 111.16, which states that "[w]hen terminating service to a consumer using a seller-owned tank, a seller shall refund the consumer within 20 days of the date when the seller disconnects propane service or is notified by the consumer in writing that the seller's equipment is no longer connected, whichever is earlier," for the unused propane. However, there does not appear to be any evidence that plaintiff disconnected defendant's propane service. Rather, the evidence showed that defendant or his agent disconnected the tanks and unearthed them. Once defendant notified plaintiff that the tanks were ready to pick up, plaintiff pumped out the unused propane and calculated defendant's credit shortly afterward. Accordingly, defendant has failed to establish a violation of this rule.

Next, defendant claims that the court erred in failing to address his claims of breach of contract or the implied covenant of good faith and fair dealing. By ruling in favor of plaintiff, the court implicitly rejected these claims. The record supports its ruling. As discussed above, the court found that plaintiff did not act in bad faith, thus defeating defendant's implied covenant

4

claim. Defendant does not explain what provision of the contract was breached by plaintiff; accordingly, we do not address this argument. See Rowe v. Brown, 157 Vt. 373, 379 n.7 (1991) ("[T]his Court is not required to undertake a search for error where it is not adequately briefed or supported by the arguments.").

Finally, we address defendant's arguments regarding attorney's fees. Defendant first claims that plaintiff was only entitled to recover attorney's fees in relation to the pool account because that was the account number written on the application that he signed. Insofar as we affirm the trial court's conclusion that the terms and conditions on the 2016 application apply to all of defendant's accounts, this argument fails. Plaintiff was contractually entitled to recover reasonable attorney's fees expended on collecting the amounts owed for all three accounts.

Defendant also claims that the attorney's fee award was disproportionate to the damages awarded to plaintiff. However, it is well-settled "that an attorney's fee award need not be directly 'proportionate' to a damage award." Vastano v. Killington Valley Real Est., 2010 VT 12, ¶ 9, 187 Vt. 628 (mem.). Rather, the issue is "whether the fee award is reasonable given the demands of the case." Soon Kwon v. Eaton, 2010 VT 73, ¶ 20, 188 Vt. 623 (mem.).

"In calculating the award of attorney's fees, the court looks to the most useful starting point, the 'lodestar figure,' by determining the number of hours reasonably expended on the case multiplied by a reasonable hourly rate, and then adjusting that fee upward or downward based on various factors." L'Esperance v. Benware, 2003 VT 43, ¶ 22, 175 Vt. 292 (quotation omitted). Those factors may include "the novelty of the legal issue, the experience of the attorney, and the results obtained in the litigation," among others. Id. Because a fee award "depends on the unique facts of the underlying case," we "afford a trial court's determination as to the amount of an award great discretion and will disturb it only if the court has abused that discretion." Kwon, 2010 VT 73, ¶ 13.

We see no abuse of discretion here. The total amount of fees billed to plaintiff was $61,428. Plaintiff sought $54,907 in attorney's fees from defendant and provided expert testimony to support its claim. The court reviewed the invoices and reduced plaintiff's amount by $9,484 to exclude redundant billing, instances of intra-office strategy conversations, and the court's general sense of "billing judgment." This left a lodestar amount of $45,423. The court explained that although the action began as a collections case, defendant asserted affirmative defenses and counterclaims that turned it into a broader litigation involving claims for breach of contract, consumer fraud, and breach of the covenant of good faith and fair dealing. These claims expanded the scope of discovery and the complexity of the case, which lasted over three years. The court found that plaintiff's primary attorney was a relatively inexperienced associate and that it was necessary for the firm's partners to bill some hours to assist him. However, it excluded several of the partner's fees as unreasonable. It also found that plaintiff's decision to aggressively oppose defendant's motion to amend his answer was not reasonable within the scope of the case. It therefore reduced the lodestar amount by $6,367, making the final award $39,056.

The court applied the correct legal standard and provided a rational basis for its decision. Although defendant challenges certain individual invoices, he did not provide his own expert to demonstrate that these fees were unreasonable. Accordingly, we cannot conclude that the court abused its discretion in fashioning its award. See Kwon, 2010 VT 73, ¶ 21 (affirming attorney's fee award of $18,975 for damages award of $4929 where trial court applied correct standard and

explained its decision and plaintiff's fees were supported by expert affidavit); <u>Vastano</u>, 2010 VT 12, ¶ 9 (affirming attorney's fee award of $74,988 where plaintiff awarded damages of $7875).

<u>Affirmed</u>.

BY THE COURT:

Paul L. Reiber, Chief Justice

Karen R. Carroll, Associate Justice

William D. Cohen, Associate Justice