NOTICE: This opinion is subject to motions for reargument under V.R.A.P. 40 as well as formal revision before publication in the Vermont Reports. Readers are requested to notify the Reporter of Decisions by email at: JUD.Reporter@vermont.gov or by mail at: Vermont Supreme Court, 109 State Street, Montpelier, Vermont 05609-0801, of any errors in order that corrections may be made before this opinion goes to press.

2019 VT 4

Nos. 2017-377 & 2018-005

| | |
|---|---|
| Garrett M. Cornelius | Supreme Court |
| | |
| | On Appeal from |
| v. | Superior Court, Orleans Unit, |
| | Civil Division |
| | |
| The Chronicle, Inc. | June Term, 2018 |

Robert R. Bent, J.

Garrett M. Cornelius, Pro Se, Newport, Plaintiff-Appellee (2017-377), Plaintiff-Appellant (2018-005).

Matthew B. Byrne of Gravel & Shea PC, Burlington, for Defendant-Appellant (2017-377), Defendant-Appellee (2018-005).

PRESENT: Reiber, C.J., Skoglund, Robinson, Eaton and Carroll, JJ.

¶ 1. **REIBER, C.J.** These consolidated cases raise issues concerning Vermont's anti-SLAPP (strategic lawsuit against public participation) statute, 12 V.S.A. § 1041. Plaintiff Garrett Cornelius filed suit alleging invasion of privacy by newspaper, the Chronicle, after newspaper published two articles containing information about plaintiff. In a series of orders, the trial court granted newspaper's motions to strike the claims under the anti-SLAPP statute and awarded newspaper a small fraction of the attorney's fees it sought. Plaintiff appeals the court's orders striking his claims and newspaper appeals the amount of attorney's fees. We conclude that the claims were properly stricken under the anti-SLAPP statute and that the court erred in limiting the attorney's fees award. Therefore, we affirm in part and reverse and remand in part.

¶ 2.	Plaintiff's claims stem from two articles written by newspaper. In July 2016, newspaper published one article under two titles. The article was entitled "Cornelius brothers threaten parole officer" on the newspaper website and entitled "Cornelius brothers deemed a possible threat" in the print version of the paper. The article explained that the State Police Vermont Intelligence Center (VIC) had cautioned local law enforcement about "a possible threat from the Cornelius brothers, because of what they say is a history of erratic and violent behavior." It quoted the safety bulletin as follows: " 'Both brothers have lengthy criminal involvements and are currently involved in active and ongoing investigations involving unlawful trespass, violation of court orders, and violation of several restraining orders,' " and " 'Although no direct threats to law enforcement have been made, their behavior has become increasingly violent, erratic and unpredictable.' " The article was lengthy and reported about past behavior of plaintiff's brother, including criminal charges. It also described the brothers' involvement in the killing of Isaac Hunt, which the state's attorney determined was justified. In November 2016, the Chronicle published the second article at issue, which was entitled "Garret Cornelius accused of aiding brother," and described plaintiff's arraignment on criminal charges for aiding in the escape of his brother. The article was based on the police affidavit supporting the information and the reporter's own observations at the arraignment. This article described plaintiff as "loud and combative" during the proceeding and stated that plaintiff "offered verbal expletives to just about any officer of the court tasked with handling his case."

¶ 3.	Plaintiff filed suit against the newspaper alleging that the newspaper articles placed plaintiff in a false light.[1] As to the July 2016 article, plaintiff alleged, among other things, that the

---

[1] Plaintiff's complaint originally contained counts I and II, which solely related to the June 2016 article. In May 2017, plaintiff moved to amend his complaint, arguing that he was entitled to amend as a matter of right because newspaper had filed motions to strike or dismiss but no responsive pleading. The trial court granted the motion to amend as a matter of right and plaintiff added count III related to the November 2016 article. See V.R.C.P. 15(a) (allowing party to amend pleading "once as a matter of course at any time before a responsive pleading is served").

article was incorrect because plaintiff did not have any criminal history, a history of erratic and violent behavior, or lengthy criminal involvements, and was not the subject of ongoing investigations or exhibiting escalating or increasingly unpredictable behavior. Plaintiff also alleged that the article falsely represented that he was argumentative with police during previous interactions and that he possessed a .22 pistol. As to the November 2016 article, plaintiff alleged that he was not "loud and combative" and did not offer "verbal expletives to just about any officer of the court tasked with handling his case." Plaintiff asserted that he was respectful and courteous, and the false representations of his behavior were harmful to him.

¶ 4. Newspaper moved to dismiss the suit and to strike the complaint under the anti-SLAPP statute.[2] Newspaper claimed that both articles were related to the newspaper's exercise of free speech and involved topics of public concern, and that there was reasonable factual support for the assertions made in the articles. As to the June 2016 article, newspaper delineated the source for each fact in the article and attached supporting affidavits and exhibits. As to the November 2016 article, newspaper explained that the bulk of the information in the article was derived directly from the affidavit accompanying the charges filed against plaintiff and from the personal observations of a newspaper reporter in the room for the arraignment and again attached an affidavit and exhibits.

¶ 5. As to counts I and II, pertaining to the June 2016 article, the court granted the motion to strike.[3] The court concluded that the article contained matter connected to a public issue

---

[2] Newspaper moved to strike counts I and II after the complaint was filed. After plaintiff amended the complaint to add a count related to the November 2016 article, newspaper moved to strike and to dismiss count III.

[3] The court made a series of orders, the result of which was to grant the motion to strike counts I and II. The court initially granted the request to strike counts I and II, but subsequently vacated that order and set the motion for a hearing based on its conclusion that the statute required a hearing. See 12 V.S.A. § 1041(d) ("The court shall hold a hearing on a special motion to strike not more than 30 days after service of the motion unless good cause exists for an extension."). After the hearing in March 2017, the court reaffirmed its earlier grant of the motion to strike.

3

because the article concerned matters related to public safety and criminal investigations. The court noted that information in the article came from the VIC Bulletin, court records, and public Facebook posts made by plaintiff and his brother. The court further explained that the information about the killing of Isaac Hunt was a matter of public concern and plaintiff voluntarily put himself in the public eye by providing interviews to the media on the topic. The court concluded that plaintiff failed to show that he was actually injured by the articles or that the statements in it were "devoid of any reasonable factual support and any arguable basis in law." 12 V.S.A. § 1041(e)(1)(A).

¶ 6. As to count III, pertaining to the November 2016 article, the court initially granted newspaper's motion to dismiss for failure to state a claim, V.R.C.P. 12(b)(6), and denied the motion to strike as moot. The court concluded that plaintiff had failed to plead a prima facie case because the opinion statements in the article could not be proven false, an element of a false-light claim. Following newspaper's motion to reconsider, the court granted newspaper's motion to strike count III.

¶ 7. Newspaper sought attorney's fees in conjunction with its motions to strike. 12 V.S.A. § 1041(f)(1) ("If the court grants the special motion to strike, the court shall award costs and reasonable attorney's fees to the defendant."). Newspaper attached an affidavit and the bills related to the litigation, seeking $34,185.33 in fees and expenses. The court initially granted newspaper's motion for attorney's fees. Following plaintiff's motion to reconsider, the court denied attorney's fees, reasoning that newspaper, a corporation with litigation insurance, was not the ordinary citizen the fee-shifting provision was meant to cover. The court subsequently revised this order, granting newspaper limited fees. The court reasoned that because newspaper had litigation insurance, it did not incur costs in excess of the deductible and therefore granted $5000, the amount of the deductible.

4

## I. Application of the Anti-SLAPP Statute

¶ 8. We first address plaintiff's argument that his suit did not fit within the bounds of the anti-SLAPP statute. The anti-SLAPP statute attempts "to define the proper intersection between two constitutional rights—a defendant's right to free speech and petition and a plaintiff's right to petition and free access to the courts." Felis v. Downs Rachlin Martin PLLC, 2015 VT 129, ¶ 41, 200 Vt. 465, 133 A.3d 836. The statute contains a two-step process. A defendant may move to strike a complaint in "an action arising from the defendant's exercise, in connection with a public issue, of the right to freedom of speech or to petition the government for redress of grievances under the U.S. or Vermont Constitution." 12 V.S.A. § 1041(a). If the defendant satisfies the threshold requirement, the court must grant the motion "unless the plaintiff shows that: (A) the defendant's exercise of his or her right to freedom of speech and to petition was devoid of any reasonable factual support and any arguable basis in law; and (B) the defendant's acts caused actual injury to the plaintiff." Id. § 1041(e)(1). The question of whether § 1041 applies is a question of law that we review de novo. See Garretson v. Post, 68 Cal. Rptr. 3d 230, 235 (Ct. App. 2007) (explaining that trial court's ruling on SLAPP motion is reviewed under de novo standard of review); Baseball Club of Tacoma v. SDL Baseball Partners, LLC, 348 P.3d 1283, 1286 (Wash. Ct. App. 2015) (stating that trial court's ruling on special motion to strike is reviewed de novo).

¶ 9. In considering the proper scope of the anti-SLAPP statute, this Court emphasized that it would be inappropriate to adopt an overly broad interpretation of the statute because that would limit access to the courts. Felis, 2015 VT 129, ¶ 41. Therefore, this Court held that in all cases involving the anti-SLAPP statute, the activity must meet the public-issue requirement of the statute. Id. ¶ 52 ("We conclude that the 'in connection with a public issue' requirement of 12 V.S.A. § 1041(a) must be met in any motion to strike under the anti-SLAPP statute, regardless of the type of activity."). The exercise of free speech in connection with a public issue includes,

5

among other definitions: "any written or oral statement made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law" and "any other statement or conduct concerning a public issue or an issue of public interest which furthers the exercise of the constitutional right of freedom of speech or the constitutional right to petition the government for redress of grievances." 12 V.S.A. § 1041(i)(1), (4).

¶ 10. We conclude that the articles in this case were exercises of free speech and connected to a public issue because they concerned public safety, law enforcement activity, possible criminal behavior, and the reporting of arrests. As an initial matter, we conclude that newspaper was exercising a right of free speech by publishing the articles. See Braun v. Chronicle Publ'g Co., 61 Cal. Rptr. 2d 58, 63 (Ct. App. 1997) (explaining that news reporting "is free speech"). We have not yet had occasion to delve too deeply into the meaning of "in connection with a public issue" as used in the statute. In Felis, this Court held that valuation of a party's business in the context of a divorce proceeding was not a matter of public concern. 2015 VT 129, ¶ 53. Although it is unpublished and nonprecedential, it is useful to consider an order by a panel of this Court because it is particularly on point. Chandler v. Rutland Herald Publ'g, No. 2015-265, 2015 WL 7628687 (Vt. Nov. 19, 2015) (unpub. mem.), http://www.vermontjudiciary.org/sites/default/files/documents/eo15-265.pdf [https://perma.cc/XNZ6-79VH]. Chandler held that matters relating to criminal charges were of public concern, explaining that "[a]llegations of public corruption clearly present a matter of public interest, as do the results of an investigation into such allegations, including criminal charges being lodged against the person who made the allegations." Id. at *2. The case explained that the public and the media have a constitutional right of access to information about law enforcement and crime activities. Id. Although this holding is nonprecedential, we conclude it is persuasive and reaffirm today that matters connected to law enforcement investigation, public safety, and crime in the community are of public concern. As this Court has recognized in other contexts, under the First Amendment "the public and the media

6

have a constitutional right of access to information relating to the activities of law enforcement officers and to information concerning crime in the community." Caledonia Record Publ'g Co. v. Walton, 154 Vt. 15, 21, 573 A.2d 296, 299 (1990).

¶ 11.    Therefore, we consider whether the two articles met this standard.  Counts I and II of plaintiff's complaint relate to an article published in July 2016 entitled both "Cornelius brothers threaten parole officer," and "Cornelius brothers deemed possible threat."  The article repeated information from the confidential VIC bulletins regarding law enforcement's assessment that the brothers presented a possible threat.  The article also recounted that plaintiff's brother posted a photograph of the head of Probation and Parole in Newport on his Facebook page, stating that the Cornelius brothers were looking for him and asking people with information about his whereabouts to call them.  The article reported that the probation officer considered this a threat.  The article then listed the criminal history of plaintiff's brother.  The article also recounted that plaintiff had posted a message on the Newport Police Department's Facebook page, stating:

> Everyone in this state, INCLUDING me and my brother inherently have the constitutional right to fight our asses off defending our lives and defending our right to live FREE.  We also have the constitutional right to have, reside on, and protect our property.  We have the constitutional right to pursue and HAVE happiness.  Our right to ENJOY LIFE is also constitutionally protected, and that by the definition of "unalienable" ….NOBODY CAN TAKE THOSE RIGHTS AWAY, NOR CAN YOU GIVE THEM UP.  You f— DISGUSTING and CONSPIRING DIRTBAGS.  You know who you are.  I am done being patient with the LAWLESS and UNENDING WAR you have engaged in against us.  You should have known better than to blatantly ignore the fundamental laws of the land, and you certainly should have known better than to F— WITH MY FAMILY.  But you have, and you did…and you continue to do so.  That was a bad idea.

In addition, the article recounted the killing of Isaac Hunt and the state's attorney's determination that it was justified.

¶ 12.    Plaintiff asserts that some information in the article was not public and was false. He asserts that the VIC bulletin was incorrect in that he had no criminal history and that he did not

exhibit violent, criminal, or escalating behavior. He also claims that the characterization in the article that he threatened the parole officer was inaccurate and not a public matter.

¶ 13. We conclude that the article presented matters connected to a public issue. Given the connection to public safety and the operation of law enforcement, and especially given that defendant himself brought the reported-on issues to public attention by posting threats on the Newport Police Department's Facebook page, the public had an interest in law enforcement's action of characterizing plaintiff and his brother's actions as threatening and in the information that led to that characterization. The public also had an interest in the statements that plaintiff and his brother made on public Facebook accounts about law enforcement and the probation officer, particularly given that the brothers had previously placed themselves in the public light by providing interviews to the media about the killing of Isaac Hunt.

¶ 14. We are unpersuaded by plaintiff's assertion that because the VIC bulletins are labeled confidential, the information contained in them cannot be connected to a public issue. The designation of the VIC bulletins as confidential does not make the subject matter they contain any less connected to a public issue.[4] Braun, 61 Cal. Rptr. 2d at 65 (explaining that although investigation was closed to public, topic and event were still connected to public issue).

¶ 15. Because newspaper met its burden under the statute, the burden shifted to plaintiff to demonstrate that newspaper's exercise of its freedom of speech "was devoid of any reasonable factual support and any arguable basis in law." 12 V.S.A. § 1041(e)(1)(A). Defendant's assertion that information repeated from the VIC bulletin was inaccurate—including that he does not have a history of criminal behavior or erratic and violent behavior—is not enough to show a lack of

---

[4] We need not and do not decide whether law enforcement's designation of the records as confidential means the records are not public records. See Bain v. Windham Cty. Sheriff Keith Clark, 2012 VT 14, ¶ 18, 191 Vt. 190, 44 A.3d 170 (noting that "[t]here is a strong public interest in disclosure of public records, and this interest is particularly acute in the area of law enforcement" (quotation omitted)).

reasonable factual support. Newspaper did not independently make these assertions, but attributed the statements to the VIC bulletin, which did contain those assertions. Moreover, the article's characterization that the brothers had threatened the probation officer stemmed from more than the VIC bulletin; it was directly related to the public Facebook post in which the brothers singled out the head of probation and the officer's personal statement that he considered it a threat. The characterization of the bizarre and escalating behavior was also supported by plaintiff's public post on the Newport police Facebook page. Therefore, all the statements challenged by plaintiff in the June 2016 article had reasonable factual support.

¶ 16.  Turning to the November 2016 article, plaintiff does not challenge the fact that the article contained information connected to a public issue. The article described plaintiff's arraignment for aiding the escape of his brother. As explained above, the public has an interest in criminal charges and criminal proceedings and the article detailing plaintiff's arraignment was exactly this type of proceeding. In addition, plaintiff fails to demonstrate that the statements he challenges—that he was "loud and combative" and "offered verbal expletives to just about any officer of the court tasked with handling his case"—were devoid of reasonable support. The reporter was present in the room during the arraignment and filed an affidavit confirming his observations. Although plaintiff may disagree with the reporter's characterization of plaintiff's behavior, the statements made by the reporter, based on personal observations and reflecting primarily the reporter's perceptions and opinions, were not devoid of a reasonable basis.[5]

¶ 17.  As noted above, the court initially dismissed count III of the complaint, which pertained to the November 2016 article, for lack of a prima facie case. On appeal, plaintiff argues that this order was in error. Having concluded that the motion to strike was properly granted, we

---

[5] Plaintiff provided a video and transcript of the arraignment in support of his argument that the article was false. Some of the behavior described in the article was not recorded or transcribed because it was outside of the formal proceeding. We need not rely on the video or transcript to conclude that the statements in the article had a reasonable basis.

need not reach this argument. We have previously held that granting a motion to dismiss does not moot the motion to strike because the issue of attorney's fees remains a live controversy. See Felis, 2015 VT 129, ¶ 28 (holding that grant of motion to dismiss did not moot consideration of motion to strike because attorney's fees remained live issue). In contrast, granting the motion to strike does moot the motion to dismiss because there is no further relief that the Court could grant. See id. (explaining case is moot when "reviewing court can no longer grant effective relief" (quotation omitted)).

## II. Attorney's Fees

¶ 18.    Next, we turn to newspaper's challenge to the court's order on attorney's fees.[6] In general, Vermont applies the "American Rule," requiring each party to bear their own fees "in the absence of a statute or agreement to the contrary." Perez v. Travelers Ins. ex rel. Ames Dep't Stores, Inc., 2006 VT 123, ¶ 8, 181 Vt. 45, 915 A.2d 750. Here, newspaper sought attorney's fees pursuant to the anti-SLAPP statute, which provides that "[i]f the court grants the special motion to strike, the court shall award costs and reasonable attorney's fees to the defendant." 12 V.S.A. § 1041(f)(1). "The question of whether a statutory scheme compels an award of attorney's fees requires statutory construction and thus is a matter of law that we review de novo." Soon Kwon v. Eaton, 2010 VT 73, ¶ 13, 188 Vt. 623, 8 A.3d 1043 (mem.). In interpreting the statute, we look

___

[6] Plaintiff argues that because the court granted newspaper's request for attorney's fees, newspaper's arguments on appeal related to attorney's fees are moot. A case is moot if the parties no longer have an interest in the outcome or when "the reviewing court can no longer grant effective relief." In re Moriarty, 156 Vt. 160, 163, 588 A.2d 1063, 1064 (1991) (quotation omitted). Because the amount of fees remains a live controversy and this Court can grant relief as to that controversy, the matter is not moot.

Plaintiff has moved to strike newspaper's reply brief, arguing that it raises a new issue not presented in newspaper's appellant's brief. See Robertson v. Mylan Labs., Inc., 2004 VT 15, ¶ 1 n.2, 176 Vt. 356, 848 A.2d 310 (explaining that appellate court need not consider arguments raised for first time in reply brief). We deny the motion. Newspaper appealed the court's order related to attorney's fees and its initial brief asserted arguments relate to the amount of the award. The reply brief did not impermissibly raise new arguments.

first to the plain meaning to derive the intent of the Legislature. Shires Hous., Inc. v. Brown, 2017 VT 60, ¶ 9, 205 Vt. 186, 172 A.3d 1215 ("[W]e presume that the Legislature intended the plain, ordinary meaning of the statutory language."). If the language is ambiguous, we consider the statute's "subject matter, effects and consequences, as well as the reason for and spirit of the law." Id.

¶ 19.    We conclude that the plain language "shall award" indicates that the award of fees is mandatory when a motion to strike is granted.[7] See Soon Kwon, 2010 VT 73, ¶ 13 (explaining that when "statute requires an award of attorney's fees, it is not within the trial court's discretion to determine whether to award such fees"). Therefore, having granted the motion to strike in this case, an award of fees was "mandatory." Perez, 2006 VT 123, ¶ 8. The trial court does, however, have discretion in determining the amount of an award and this Court "will disturb it only if the court has abused that discretion." Soon Kwon, 2010 VT 73, ¶ 13.

¶ 20.    In accordance with the statutory provision, newspaper filed a request for attorney's fees in the amount of $34,185.33. Newspaper's attorney submitted an affidavit attesting that the amount accurately reflected the time spent on the litigation and attached a spreadsheet depicting the time entries for the case. The court declined to award the entire amount of attorney's fees requested by newspaper, but did not do so based on its discretionary authority to determine what amount was reasonable. Instead, the court concluded that as a matter of law newspaper was entitled only to the amount of its litigation-insurance deductible of $5000. The court reasoned that because newspaper's insurer was paying the balance of the fee, newspaper was entitled only to an award for what it paid out of pocket.

---

[7] Although the trial court at one point denied fees on the basis that newspaper was not a natural person, the court subsequently reversed this decision. We agree that the statute covers activity by entities, such as newspaper, as well as individuals. The statute provides that "[a] defendant" can file a special motion to strike. 12 V.S.A. § 1041(a). This broad language encompasses both natural persons and entities.

¶ 21. We review this legal conclusion de novo and conclude that the statute does not limit recovery to those fees that are not reimbursed by insurance.[8] The plain language of the statute does not support this construction. The statute contains no provision limiting the recovery of attorney's fees to those amounts that were incurred directly by the defendant as opposed to by a third party.[9] Moreover, this construction is at odds with the remedial purpose of the statute. The purpose of the statute is "to prevent retaliatory litigation against citizens exercising their right to free speech and their right to petition the government on matters of public interest." Felis, ¶ 48. One aim of the fee-shifting provision is to act as a deterrent to individuals considering whether to bring such suits in the first place. See Ketchum v. Moses, 17 P.3d 735, 741 (Cal. 2001) (explaining that fee-shifting provision in anti-SLAPP statute discourages lawsuits chilling the valid exercise of free speech). This deterrent effect on plaintiff has no relationship to who paid a defendant's attorney's fees.

¶ 22. Courts from Massachusetts and California—states whose anti-SLAPP statutes were used as models for the Vermont statute—agree that attorney's fees should be granted regardless of whether the fees are paid for by insurance or a third party. See Felis, ¶ 31 (explaining that Vermont statute was based on California statute and contains language from Massachusetts statute). In Polay v. McMahon, 10 N.E.3d 1122 (Mass. 2014), the court granted the defendant's motion to strike under that state's anti-SLAPP statute and the plaintiff argued that the defendant was not

---

[8] In discussing whether newspaper was entitled to attorney's fees paid for by its insurer, the trial court framed the issue as whether the collateral-source doctrine applied. The collateral-source rule comes from tort law and provides that a defendant is not entitled to a setoff for payments a plaintiff receives from a third, or collateral, source. Windsor Sch. Dist. v. State, 2008 VT 27, ¶ 32, 183 Vt. 452, 956 A.2d 528. Here, newspaper's right to attorney's fees is controlled by statute and therefore the collateral-source doctrine is not applicable.

[9] The Legislature knows how to exclude insured losses and has done so in other contexts, such as the restitution statute, which defines "material loss" as "uninsured property loss, uninsured out-of-pocket monetary loss, uninsured lost wages, and uninsured medical expenses." 13 V.S.A. § 7043(a)(2). Here, there is no such limit on recovery.

entitled to attorney's fees because the defendant's liability insurer paid for his defense. The court rejected that argument, noting that language of the statute did not exclude its application to situations where a third party paid the fees on the defendant's behalf. Id. at 1131. The Massachusetts high court explained that fees are still available when they are covered by insurance because the fee-shifting provision "furthers the statute's underlying purposes of broadly protecting petitioning activity and promoting resolution of 'SLAPP' litigation 'quickly with minimum cost.' " Id. (quoting Office One, Inc. v. Lopez, 769 N.E.2d 749, 760 (Mass. 2002)). Courts in California have also concluded that the fee-shifting provision of that state's anti-SLAPP statute applies regardless of whether the fees are paid by a third party. See, e.g., Macias v. Hartwell, 64 Cal. Rptr. 2d 222, 226 (Ct. App. 1997) ("Appellant cites no authority, and we have found none, that a defendant who successfully brings an anti-SLAPP motion is barred from recovering fees if the fees were paid by a third party.").

¶ 23. Therefore, we conclude that the court improperly limited the attorney's fees to the insurance deductible. On remand, the court must determine the reasonable cost of attorney's fees and award this amount to newspaper.

The orders striking plaintiff's complaint are affirmed. The order regarding attorney's fees is reversed and remanded for further proceedings consistent with this decision.

FOR THE COURT:

_____

Chief Justice