Filed 05/20/25

VERMONT SUPERIOR COURT
Lamoille Unit
154 Main Street
Hyde Park VT 05655
802-888-3887
www.vermontjudiciary.org



CIVIL DIVISION
Case No. 25-CV-00624

---

**Robert Lafayette v. Alex Abrami et al**

---

## ORDER ON PENDING MOTIONS

In this case plaintiff Robert Lafayette has sued defendants the Burlington Free Press, its subsidiary Vermont Varsity Insider, and two of its employees, Alex Abrami and Judith Altneau based on defendants' alleged failure to report on high school sports outside of Chittenden County generally and on plaintiff's son's basketball games specifically. Pending before the court are (i) plaintiff's motion for a preliminary injunction; (ii) defendants' motion to dismiss the complaint; (iii) defendants' special motion to strike the complaint under Vermont's anti-SLAPP statute; (iv) plaintiff's motion to voluntarily dismiss his initial complaint without prejudice; and (iv) plaintiff's motion to file an amended complaint. For the reasons set forth below, the court grants defendants' motions to dismiss the complaint with prejudice and for attorney's fees and costs under the anti-SLAPP statute, denies plaintiff's motion to amend and to dismiss the complaint without prejudice, and denies as moot plaintiff's motion for a preliminary injunction.

### Background

Plaintiff's pro se complaint alleges the following facts. Plaintiff is the parent of a Vermont high-school basketball player and a "lifelong student of the game." Compl. 1. Plaintiff's son, who plays for a school outside of Chittenden County, is "one of Vermont's top-performing high school basketball players." *Id.* The Burlington Free Press is Vermont's largest newspaper. In 2018, it created and marketed Vermont Varsity Insider as a platform to cover high school sports throughout Vermont. Alex Abrami and Judith Altneau report and make editorial decisions for Vermont Varsity Insider. Despite its claims of statewide coverage, Vermont Varsity Insider focuses on Chittenden County schools, many of which have advertising or other commercial relationships with defendants. While scores from other schools are reported when available, detailed analyses of games or individual players are not. Although plaintiff's son had multiple 30-point games during the 2024-2025 season, his performances were not reported in Vermont Varsity Insider, despite plaintiff's repeated complaints. This lack of coverage has hurt plaintiff's son's college prospects and caused plaintiff anxiety and stress, leading to uncontrollable vomiting, severe gastrointestinal distress, and panic attacks requiring benzodiazepine treatment. The complaint seeks compensatory and punitive damages and pleads causes of action for (i) violation of the

Vermont Consumer Protection Act; (ii) breach of contract; (iii) negligent infliction of emotional distress; and (iv) unjust enrichment. Contemporaneously with filing his complaint, plaintiff moved for a preliminary injunction that would enjoin defendants from retaliating against plaintiff or his son and require them "to provide fair and equitable coverage consistent with their advertised services." Pl.'s Mot. for Prelim. Injunction 1.

Defendants moved to dismiss the complaint under Rule 12(b)(6) of the Vermont Rules of Civil Procedure and to strike the complaint under Vermont's anti-SLAPP statute, 12 V.S.A. § 1041. Defendants also opposed plaintiff's motion for a preliminary injunction. Defendants argue that all of plaintiff's claims are barred by Article 13 of the Vermont Constitution and the First Amendment to the United States Constitution, that a special motion to strike is warranted under the anti-SLAPP statute, and that the court should issue an order to show cause to address whether plaintiff should be sanctioned for including fictitious case citations and quotations in his filings.

Plaintiff opposed defendants' motions but also moved to voluntarily dismiss his complaint without prejudice, acknowledging and apologizing for using fictitious case citations and quotations. Plaintiff then moved to amend his complaint. Defendants opposed both motions, arguing that the original complaint should be dismissed with prejudice and that the motion to amend should be denied as futile. Defendants additionally argue that the amended complaint continues to use inaccurate case citations, and that success on their motion to strike would preclude plaintiff from filing an amended complaint.

## Discussion

### 1. Motion to dismiss

A complaint should be dismissed under Rule 12(b)(6) "only if it is beyond doubt that there exist no facts or circumstances that would entitle the plaintiff to relief." *Birchwood Land Co. v. Krizan*, 2015 VT 37, ¶ 6, 198 Vt. 420 (quotation omitted). In considering a motion to dismiss, the court construes alleged facts and draws all reasonable inferences from those alleged facts in favor of the non-moving party. *Id.* Ultimately, the court must determine "whether the bare allegations of the complaint are sufficient to state a claim." *Id.*

Defendants argue for dismissal under both Article 13 of the Vermont Constitution and the First Amendment to the United States Constitution. The Vermont Supreme Court has "so far declined to extend greater free-speech protection under Article 13 than under the First Amendment," and accordingly has construed "Article 13 as coextensive with its federal analogue." *State v. Masic*, 2021 VT 56, ¶ 7, 215 Vt. 235. The Court has also made clear, however, that "[t]he Vermont Constitution is 'not a mere reflection of the federal charter,' but 'an independent authority, and Vermont's fundamental law.'" *State v. Misch*, 2021 VT 10, ¶ 14 n.8, 214 Vt. 309 (quoting *State v. Badger*, 141 Vt. 430, 448-49 (1982)). Indeed, Article 13 traces its origins to Vermont's original 1777 Constitution, adopted more

than a decade before Vermont became part of the United States or the First Amendment was ratified. Article 13 is thus "an ancestor and not a stepchild of the First Amendment." *See Oberholzer v. Galapo*, 322 A.3d 153, 173 (Pa. 2024) (discussing Pennsylvania Constitution, quotation omitted).

The state constitutional question here has been fully briefed and squarely presented. The court will accordingly address Article 13 first and refer to federal authority only to the extent it is helpful for interpreting that provision. This approach honors the state constitution's role as the primary guardian of individual rights in Vermont and ensures that its protections are not dependent on the "ebbs and flows" of federal constitutional jurisprudence. *See State v. Boyer*, 2023 VT 40, ¶ 9, 218 Vt. 267 (discussing Article 11); *Baker v. State*, 170 Vt. 194, 202 (Vermont Constitution is "the first and primary safeguard of the rights and liberties of all Vermonters"); Jeffrey S. Sutton, 51 Imperfect Solutions: States and the Making of American Constitutional Law 178-90 (Oxford Univ. Press 2018) ("A state-first approach to litigation over constitutional rights honors the original design of the state and federal constitutions. State primacy in guarding individual rights flows from the U.S. Constitution and from one of its key guarantees of liberty: federalism.); Hon. Catherine R. Connors & Connor Finch, *Primacy in Theory and Application: Lessons from A Half-Century of New Judicial Federalism*, 75 Me. L. Rev. 1, 2 (2023) (arguing that "state courts [should] consider the state constitution first" and turn "to the federal constitution only if needed to resolve the case").[1]

All of plaintiff's claims seek to hold defendants liable for marketing Vermont Varsity Insider as providing coverage of high school sports throughout Vermont but then providing vastly more detailed reporting of games played in Chittenden County than of games played elsewhere. To determine whether Article 13 protects this alleged conduct, the court looks to the constitutional text, relevant history, Vermont Supreme Court precedent interpreting the provision, and the construction of similar provisions in other state constitutions. *See Misch*, 2021 VT 10, ¶ 9 (citing *Baker*, 170 Vt. at 206; *State v. Jewett*, 146 Vt. 221, 225-27 (1985)). The goal of the inquiry "to discover and protect the core value that gave life to" to Article 13 and "to give meaning to the text in light of contemporary experience." *Id.* (quoting *State v. Kirchoff*, 156 Vt. 1, 6 (1991)).

Article 13 provides: "That the people have a right to freedom of speech, and of writing and publishing their sentiments, concerning the transactions of government, and therefore the freedom of the press ought not to be restrained." Vt. Const. ch. 1, art. 13.

---

[1] Although defendants invite the court to construe Article 13 as providing greater protection than the First Amendment, the court declines to engage in that comparative analysis. The pending motions only require the court to determine whether Article 13 protects the conduct alleged in the complaint.

This text—except for the "concerning the transactions of government" clause, which was added in 1786—was adopted verbatim from Pennsylvania's original 1776 constitution and included in Vermont's original 1777 constitution. *See generally* John N. Schaeffer, *A Comparison of the First Constitutions of Vermont and Pennsylvania*, 43 Vt. Hist. 33, 33 (1975) ("The Windsor convention that wrote the first constitution for Vermont in the Summer of 1777 relied heavily on the Pennsylvania constitution adopted in Philadelphia the previous September."). *Compare* 1776 Penn. Const. ch. 1, art. 12 ("That the people have a right to freedom of speech, and of writing, and publishing their sentiments; therefore the freedom of the press ought not to be restrained.") *with* 1777 Vt. Const., ch. 1, art. 14 ("That the people have a right to freedom of speech, and of writing and publishing their sentiments; therefore, the freedom of the press ought not be restrained.").[2]

Although records of Vermont's 1777 constitutional convention are scarce, the Pennsylvania Supreme Court has explained that the freedom of speech and press as understood by Pennsylvanians in 1776 encompassed "the right to freely publish." *Pap's A.M. v. City of Erie*, 812 A.2d 591, 604-05 (Pa. 2002) (quotation omitted). The first Pennsylvania Constitution broadly protected this "fundamental right" in direct reaction to British efforts to punish early Americans for criticizing the government and advocating unpopular beliefs. There is no basis to conclude the people of Vermont intended to adopt a less vigorous version of this right the following year, when, "emboldened by events in the colonies, [they] issued their own declaration of independence, created the independent Republic of Vermont, and adopted their own constitution," thereby becoming "the first self-created state." *See Brigham v. State*, 166 Vt. 246, 259-60 (1997) (quotation omitted). Indeed, the "new state's leaders had to convince not only the 'powers of the earth,' but also the people of Vermont and themselves, that they were entitled to statehood." *Id.* In the context of 1777, enacting vigorous protection for free expression was plainly part of this effort. *See, e.g.*, Akhil Reed Amar, The Words That Made Us: America's Constitutional Conversation, 1760-1840 at 441-42 (explaining that because, in America, "the citizens themselves were sovereign," they enjoyed a right to "virtually unfettered political debate" that in Britain belonged only to members speaking on the floor of Parliament).

While the conflicts of the Revolutionary era have faded into history, Article 13's broad protection for "freedom of speech" and "freedom of the press"—including the right to freely publish—endures. The court concludes that this right comfortably protects defendants' alleged editorial choices in deciding which games and players to prioritize in Vermont Varsity Insider.

This conclusion is supported by court decisions from both within and outside of Vermont. Constitutional protections for speech and press have long been interpreted to

---

[2] *Available at* https://avalon.law.yale.edu/subject_menus/18th.asp (last visited May 15, 2025).

protect editorial decisions concerning "[t]he choice of material to go into a newspaper." *Miami Herald Pub. Co. v. Tornillo*, 418 U.S. 241, 258 (1974) (interpreting First Amendment); *see also O'Neill v. Oakgrove Const., Inc.*, 523 N.E.2d 277, 280–81 (N.Y. 1988) ("[W]e have no difficulty in concluding that the guarantee of a free press in article I, § 8 of the New York Constitution independently" protects against "undue diversion of journalistic effort and disruption of press functions."). Moreover, the Vermont Supreme Court has repeatedly indicated that Article 13 provides vigorous protection for free expression that is at least as extensive as the First Amendment, *see, e.g.*, *Masic*, 2021 VT 56, ¶ 7; *Shields v. Gerhart*, 163 Vt. 219, 227 (1995), and sister state courts have interpreted similar state constitutional provisions as providing even more expansive protection in certain situations, *see, e.g.*, *O'Neill*, 523 N.E.2d at 280-81 (discussing N.Y. Const., art. 1, § 8); *Oberholzer*, 322 A.3d at 176 (discussing Penn. Const. art. 1, § 7).[3]

This is not to suggest Article 13's protections are absolute. *See, e.g.*, *Misch*, 2021 VT 10, ¶ 62 (rejecting "rigid categories" when interpreting Vermont Constitution (citing *Baker*, 170 Vt. at 206)). Although Article 13 states that the freedom of the press "ought not to be restrained," the court assumes that, like the First Amendment, the provision permits restrictions on certain "well-defined and narrow categories of expression [that] have "such slight social value as a step to truth that any benefit that may be derived from them is clearly outweighed by the social interest in order and morality." *State v. VanBuren*, 2018 VT 95, ¶ 21, 210 Vt. 293, *as supplemented* (June 7, 2019) (quoting *Virginia v. Black*, 538 U.S. 343, 358-59)). But no such categories of express are apparent here. Plaintiff's complaint expressly seeks to punish defendants for their reporting and editorial decisions. Although plaintiff casts his claims as being centered on defendants' allegedly false and misleading marketing claims of providing "statewide" or "Vermont-wide" coverage, the complaint makes clear that defendants did in fact report on games throughout Vermont, but did not do so to plaintiff's satisfaction. The gravamen of each of plaintiff's claims is that defendants engaged in "selective reporting" and failed to provide "balanced," "fair," or sufficiently "comprehensive" statewide coverage. Compl. 19 (Consumer Protection Act), 23 (breach of contract), 25 (negligent infliction of emotional distress), 29 (unjust enrichment).

---

[3] Article 13's "concerning the transactions of government" clause might plausibly be read to limit the provision's protections to speech about government. The Vermont Supreme Court has suggested otherwise, however, raising the possibility that this language might instead "give greater protection in some matters of public concern." *Shields*, 163 Vt. at 227 (citing *In re Morrissey*, 149 Vt. 1, 18-19 (1987); *Wickwire v. State*, 725 P.2d 695, 703 (Alaska 1986); *see also* Vt. Sec'y of State, Records of the Council of Censors of the State of Vermont 81-82, 720 (Gillies & Sanford, eds. 1991) (noting that the "concerning the transactions of government" language was added in 1786 along with a number of other amendments seemingly designed to provide public officials with more clearly defined legal authority, subject to greater public scrutiny).

These allegations fail to state a claim for which relief can be granted under the Vermont Constitution.

The motion to dismiss is accordingly granted and the motion for a preliminary injunction is denied as moot.

## 2. Motion to Amend

"Under the rules of civil procedure, leave to amend the complaint 'shall be freely given when justice so requires," and amendments should be liberally allowed "when opposing parties will not be prejudiced." *Colby v. Umbrella, Inc.*, 2008 VT 20, ¶ 4, 184 Vt. 1, 955 (quoting V.R.C.P. 15(a)). "But a court may deny a motion to amend when, among other reasons, amendment would be futile." *Id.* "Amendment is futile if the amended complaint cannot withstand a motion to dismiss." *Vasseur v. State*, 2021 VT 53, ¶ 7, 215 Vt. 224, 227.

Plaintiff's amended complaint repeats the causes of action in his original complaint and adds a fifth cause of action for retaliation based on defendants allegedly failing to include plaintiff's "known associate"—the state's "quantifiable metric leader"—on Vermont Varsity Insider's "all state team" selections. Proposed Am. Compl., Count V. While the proposed amended complaint better conforms to Vermont's pleading requirements, it suffers from the same fatal flaws as the original complaint, namely, it seeks to punish defendants' editorial decisions in violation of Article 13 of the Vermont Constitution. Accordingly, the motion to amend is denied. To the extent plaintiff's motion to dismiss the original complaint without prejudice is not moot, it is also denied.

## 3. Motion to Strike

The court will additionally consider whether to grant defendants' special motion to strike. *See Wolfe v. VT Digger*, 2023 VT 50, ¶ 19, 218 Vt. 408 ("It is now well-settled under our law that when a defendant files both a motion to dismiss and a special motion to strike the complaint under 12 V.S.A. § 1041, granting the motion to dismiss does not moot the motion to strike because the issue of attorney's fees remains a live controversy." (quotations and alterations omitted)); 12 V.S.A. § 1041(f)(1) ("If the court grants the special motion to strike, the court shall award costs and reasonable attorney's fees to the defendant.").

Vermont's anti-SLAPP statute, codified at 12 V.S.A. § 1041, is designed to combat "strategic lawsuits against public participation." *See generally Felis v. Downs Rachlin Martin PLLC*, 2015 VT 129, ¶¶ 29-52. As the Vermont Supreme Court has explained:

> The statute contains a two-step process. A defendant may move to strike a complaint in 'an action arising from the defendant's exercise, in connection with a public issue, of the right to freedom of speech or to petition the government for redress of grievances under the U.S. or Vermont Constitution.' If the defendant satisfies the threshold requirement, the court must grant the motion 'unless the plaintiff shows that: (A) the defendant's

exercise of his or her right to freedom of speech and to petition was devoid of any reasonable factual support and any arguable basis in law; and (B) the defendant's acts caused actual injury to the plaintiff.

*Cornelius v. The Chron., Inc.*, 2019 VT 4, ¶ 8, 209 Vt. 405 (quoting 12 V.S.A. § 1041(a), (e)(1).

Because the statute attempts to balance two constitutional rights—"a defendant's right to free speech and petition and a plaintiff's right to petition and free access to the courts"—the statute "should be construed as limited in scope" and "great caution should be exercised in its interpretation." *Felis*, 2015 VT 120, ¶ 41. To that end, a motion to strike must be denied if the movant cannot satisfy the "in connection with a public issue" requirement, "regardless of the type of activity" at issue. *Id.*, ¶ 52.

As discussed above, the court concludes that defendants' alleged conduct involved the exercise of freedom of speech under the Vermont Constitution. The question remains, however, whether that exercise was "in connection with a public issue" within the meaning of the anti-SLAPP statute.

Drawing on California law, from which Vermont's anti-SLAPP statute was derived, the Vermont Supreme Court has explained:

> [S]peech or activity may concern a public issue or be of public interest if the subject of the statement or activity precipitating the claim was a person or entity in the public eye, the statement or activity precipitating the claim involved conduct that could affect large numbers of people beyond the direct participants, or the statement or activity precipitating the claim involved a topic of widespread public interest.

*Polak v. Ramirez-Diaz*, 2025 VT 9, ¶ 26 (quotation omitted). The court concludes that reporting on high school sports for a local newspaper audience is speech "in connection with a public issue" insofar as high school sports is topic of interest to at least some segment of the general public and not just the players, coaches, and parents who are directly involved in any specific game or program. *Compare Maloney v. T3Media, Inc.*, 853 F.3d 1004, 1010 (9th Cir. 2017 (photographs "memorializ[ing] cherished moments in NCAA sports history" was in connection with a public issue under California law); *Hecimovich v. Encinal Sch. Parent Tchr. Org.*, 203 Cal. App. 4th 450, 468 (Cal. Ct. App. 2012) (concluding that "safety in youth sports, not to mention problem coaches/problem parents in youth sports, is another issue of public interest within the [California] SLAPP law").

Moving to the next step of the anti-SLAPP analysis, the court considers whether plaintiff has shown that "the defendant's exercise of his or her right to freedom of speech and to petition was devoid of any reasonable factual support and any arguable basis in law." 12 V.S.A. § 1041 (e)(1)(A). Plaintiff cannot make this showing. Plaintiff's complaint

and other filings focus on defendant's use of the name Vermont Varsity Insider and allegedly false claims that it provides "statewide" or "Vermont-wide" coverage of high school sports. But the complaint acknowledges that defendants do in fact report the scores of games outside Chittenden County, including games played by plaintiff's son. This is further supported by the affidavit of Alex Abrami, submitted in support of defendants' motion strike, which is unrebutted.[4]

Based on the foregoing, the court grants defendants' special motion to strike. Because the complaint has already been dismissed for failure to state a claim, and the proposed amendment has been denied, the impact of granting the motion to strike is limited. Defendants are entitled their "costs and reasonable attorney's fees." 12 V.S.A. §1041. The clerk will schedule a hearing on this issue. Defendants shall file their fee request at least 10 days in advance of the hearing. Plaintiff may file an opposition seven days thereafter.

### 4. Plaintiff's misleading citations of legal authorities

Plaintiff has admitted using fictitious case citations and quotations in his filing to the court despite previously having been warned against doing so by at least one other court. *See* Pl.'s Mot. to Dismiss Compl. 1; Order to Show Cause, *Lafayette v. Blueprint Basketball et al.*, 23-CV-05000 (Apr. 26, 2024). At the attorney's fee hearing, plaintiff is ordered to show cause why sanctions should not be imposed.

### Order

Plaintiff's motion for a preliminary injunction is MOOT. Defendants' motion to dismiss is GRANTED. Defendants' special motion to strike is GRANTED. Plaintiff's motion to dismiss the complaint without prejudice is DENIED. Plaintiff's motion to amend the complaint is DENIED. The clerk shall schedule a hearing on defendants' costs and reasonable attorney's fees. At that hearing, plaintiff is ordered to show cause why sanctions should not be imposed for his continued use of fictious case citations and quotations.

Electronically signed on: 5/20/2025 pursuant to V.R.E.F. 9(d)

Benjamin D. Battles
Superior Court Judge

---

[4] Plaintiff's response—filed 26 days after the motion to strike—is also untimely. *See* 12 V.S.A. § 1041(b) ("A party may file a response to the motion not more than 15 days after the motion is served on the party," unless the deadline is extended for good cause.").