Filed 12/18/25

VERMONT SUPERIOR COURT

Lamoille Unit
154 Main Street
Hyde Park VT 05655
802-888-3887
www.vermontjudiciary.org

CIVIL DIVISION

Case No. 25-CV-00624



| Robert Lafayette v. Alex Abrami et al |
|---|

## ORDER ON ATTORNEY'S FEES AND SANCTIONS

On May 20, 2025, the court dismissed plaintiff's claims and granted defendants' motion to strike the complaint under Vermont's anti-SLAPP statute. The court then set a hearing on defendant's costs and attorney's fees pursuant to the anti-SLAPP statute, and for plaintiff to show cause why he should not be sanctioned for his repeated use of fake case citations and quotations in his legal filings. After numerous delays, the hearing on attorney's fees and sanctions was set for September 9, 2025. The day before the hearing, the court granted plaintiff's request to cancel the hearing and decide the issues based on the filings submitted. Having considered those filings, the court grants defendants' request for attorney's fees in the amount of $7,360.96. The court furthers sanctions plaintiff for his litigation conduct by imposing a pre-filing injunction.

### I. Attorney Fees

When the court grants a motion to strike under the anti-SLAPP statute, "the court shall award costs and reasonable attorney's fees to the defendant." 12 V.S.A. §1041(f)(1). "[T]he award of fees is mandatory when a motion to strike is granted." *Cornelius v. The Chron., Inc.*, 2019 VT 4, ¶ 19, 209 Vt. 405.

A panel of the Vermont Supreme court recently explained the relevant framework for evaluating an attorney's fee award:

> In calculating the award of attorney's fees, the court looks to the most useful starting point, the 'lodestar figure,' by determining the number of hours reasonably expended on the case multiplied by a reasonable hourly rate, and then adjusting that fee upward or downward based on various factors. Those factors may include the novelty of the legal issue, the experience of the attorney, and the results obtained in the litigation, among others.

*Bourne's Inc. v. Lemelson*, No. 24-AP-260, 2025 WL 1356368, at *4 (Vt. May 9, 2025) (unpub. three-justice entry order). Whether hours were "reasonably expended" requires exercise of "billing judgment" to determine whether certain time billed should be excluded from the fee request as "excessive, redundant, or otherwise unnecessary." *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983).

Defendants request $31,308.40 in attorney's fees and expenses, representing $31,294 in fees for attorney Mathew Byrne's time and $14.40 in court costs. Plaintiff opposes the fee

request on the basis that it includes a significant amount of time that Attorney Byrne billed for work related to motions besides the special motion to strike under the anti-SLAPP statute. Plaintiff requests that any fee award be limited to $7,210.66, which plaintiff argues represents the reasonable time attributable to the special motion to strike based on Defendants' own billing records.

Attorney Byrne's rate during the relevant period ranged from approximately $425 per hour in February 2025 to $465 per hour beginning in March 2025. Although this rate is relatively high for Lamoille County, the court finds it reasonably reflects Attorney Byrne's expertise representing media defendants statewide throughout Vermont, which often includes, as here, presenting detailed constitutional and statutory arguments. Plaintiff has not challenged the reasonableness of Attorney Byrne's hourly rate.

As noted above, plaintiff argues that defendants should only be permitted to recover Attorney Byrne's fees for work related to the special motion to strike and not for all of his fees incurred in defending the action. Vermont's anti-SLAPP statute is modeled in large part on similar laws in California and Massachusetts. *See Cornelius*, 2019 VT 4, ¶ 22. The California courts have interpreted the fee-shifting provision in the California statute to apply "only to the motion to strike and not to the entire action." *See, e.g.*, *S. B. Beach Props. v. Berti*, 138 P.3d 713, 717 (Cal. 2006) (quotation omitted); *Christian Rsch. Inst. v. Alnor*, 165 Cal. App. 4th 1315, 1320 (Cal Ct. App. 2008) ("The defendant may recover fees and costs only for the motion to strike, not the entire litigation."). In Massachusetts, however, the court "has discretion to award attorney's fees and costs beyond those incurred in bringing the special motion itself." *Polay v. McMahon*, 10 N.E.3d 1122, 1130 (Mass. 2014).

The language of Vermont's fee-shifting provision most closely tracks California's provision. *Compare* 12 V.S.A. § 1041(f)(1) ("If the court grants the special motion to strike, the court shall award costs and reasonable attorney's fees to the defendant. If the court denies the special motion to strike and finds the motion is frivolous or is intended solely to cause unnecessary delay, the court shall award costs and reasonable attorney's fees to the plaintiff.") *with* Cal. Civ. Proc. Code § 425.16(c)(1) ("[A] prevailing defendant on a special motion to strike shall be entitled to recover that defendant's attorney's fees and costs. If the court finds that a special motion to strike is frivolous or is solely intended to cause unnecessary delay, the court shall award costs and reasonable attorney's fees to a plaintiff prevailing on the motion."), *with* Mass. Gen. Laws Ann. ch. 231, § 59H ("If the court grants such special motion to dismiss, the court shall award the moving party costs and reasonable attorney's fees, including those incurred for the special motion and any related discovery matters."). Moreover, the court is persuaded that limiting a fee award to the motion to strike itself appropriately balances the competing rights at issue in anti-SLAPP litigation and is consistent with the Vermont Supreme Court's admonition that "the anti-SLAPP statute should be construed as limited in scope and that great caution should be exercised in its interpretation." *Felis v. Downs Rachlin Martin PLLC*, 2015 VT 129, ¶ 41, 200 Vt. 465.

2

Attorney Byrne's fee spreadsheet indicates the following entries related to the motion to strike:

| DATE | HOURS | RATE | FEE | NARRATIVE |
|---|---|---|---|---|
| 2/16/2025 | 1.8 | $424.52 | $764.13 | Continue to draft motion to dismiss; draft motion to strike |
| 2/17/2025 | 7.2 | $424.51 | $3,056.50 | Draft motion to strike |
| 2/18/2025 | 2.3 | $424.51 | $976.38 | Continue to draft motion to strike |
| 2/19/2025 | .7 | $424.51 | $297.16 | Telephone call with client re: motions; draft opposition to motion for preliminary injunction |
| 2/26/2025 | 1.3 | $424.52 | $551.87 | Finalize motion to dismiss, motion to strike, and opposition to motion for preliminary injunction for client review |
| 3/4/2025 | .3 | $465 | $139.50 | Telephone call with client re filing documents |
| 3/5/2025 | 1.2 | $465 | $558 | Draft motion to dismiss, motion to strike, and opposition to motion for preliminary injunction |
| 3/6/2025 | 2.9 | $465 | $1,348.50 | Finalize motion to strike, motion to dismiss, and opposition to motion for preliminary injunction for filing |
| 4/1/2025 | 3.7 | $465 | $1,720.50 | Draft reply briefs in support of motions to dismiss and to strike |
| 4/2/2025 | 3.8 | $465 | $1,767 | Continue to draft reply briefs in support of motions to dismiss and to strike |
| 4/3/2025 | 1 | $465 | $465 | Continue to draft reply briefs in support of motion to strike and to dismiss; email to client re same |

As the spreadsheet reflects, only two time entries (2/17 and 2/18), totaling $4,032.88 in fees, are exclusively devoted to defendants' motion to strike. Four entries (2/16, 4/1, 4/2, and 4.3), totaling $4,716.63 in fees, pertain to both the motion to strike and defendants' motion to dismiss. And another four entries (2/19, 2/26, 3/4, 3/5, and 3/6), totaling $2,895.03, pertain to the motion to strike, the motion to dismiss, and defendants' opposition to plaintiff's preliminary injunction motion. The court concludes the overall time expended on the various motion filings is reasonable. In the absence of a more detailed breakdown, the court will award defendants 100% of the 2/17 and 2/18 time entries ($4,032.88); 50% of

3

the 2/16, 4/1, 4/2, and 4/3 entries ($2,358.32); and 33% of the 2/19, 2/26, 3/4, 3/5, and 3/6 entries ($955.36), for a total of $7,346.56, reflecting the approximate amount of time reasonably expended on the motion to strike. Defendants are also entitled to their $14.40 in court costs, making the total award of expenses and fees $7,360.96.

## II. Sanctions

The court noted in its May 20 order that plaintiff had used fictitious case citations and quotations in his briefing to this court despite previously having been warned against doing so by at least one other court. The court then ordered plaintiff to show cause why sanctions should not be imposed. *See* Order on Pending Motions 8 (May 20, 2025). As noted above, plaintiff waived his right to hearing on the issue and instead asked the court to rule based on the parties' written submissions.

Plaintiff has represented himself in these proceedings. "[A]lthough pro se litigants receive some leeway from the courts, they are still bound by the ordinary rules of civil procedure." *Zorn v. Smith*, 2011 VT 10, ¶ 22, 189 Vt. 219 (quotation omitted). "These include the obligations of Rule 11 and sanctions for noncompliance." *Id.*

Rule 11(b) provides in relevant part that, by submitting a filing to the court, "an attorney or unrepresented party is certifying that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances" that the filing "is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation," and that "the claims, defenses, and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law." V.R.C.P. 11(b)(1), (2).

In this litigation, plaintiff has repeatedly presented the court with filings that misrepresent the holdings of existing cases or cite to nonexistent cases. To take just a few examples, plaintiff's initial complaint cites to the nonexistent case of *Tetreault v. Stark*, 2017 VT 96, 206 Vt. 435, *see* Compl. at 15, and a nonexistent quotation from an actual decision in *Green Mountain Chrysler Plymouth Dodge Jeep v. Crombie*, 508 F. Supp. 2d 295, 354 (D. Vt. 2007), *see* Compl. at 13. His preliminary injunction motion included fabricated quotations from the actual cases of *L'Esperance v. Benware*, 2003 VT 43, 175 Vt. 292, *Contu v. Town of Cavendish*, 2011 VT 27, 189 Vt. 336, and *Taylor v. Town of Cabot*, 2017 VT 92, 205 Vt. 586. After the court gave plaintiff notice that it was considering sanctions on May 20, plaintiff continued to repeatedly cite fake cases and fabricated quotations in his June 27, July 2, and July 8 filings with the court.

Plaintiffs' conduct violates Rule 11(b)(2). As one court has recently explained with respect to the analogous federal rule 11:

> A fake opinion is not 'existing law' and citation to a fake opinion does not provide a non-frivolous ground for extending, modifying, or reversing existing law, or for establishing new law. Accordingly, the Second Circuit, as well as district courts across the country, have found the submission of nonexistent case citations in filings to the court to constitute sanctionable conduct under Rule 11(b)(2).

*Ramirez v. Humala*, No. 24-CV-242, 2025 WL 1384161, at *1 (E.D.N.Y. May 13, 2025) (quoting *Park v. Kim*, 91 F.4th 610, 613-16 (2d Cir. 2024) (other quotations omitted)); *see also Park*, 91 F.4th at 615 ("At the very least, the duties imposed by Rule 11 require that attorneys read, and thereby confirm the existence and validity of, the legal authorities on which they rely. Indeed, we can think of no other way to ensure that the arguments made based on those authorities are "warranted by existing law," or otherwise "legally tenable." (quoting F.R.C.P. 11(b)(2); *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 393 (1990)).

Having found a violation, the court turns to the question of an appropriate sanction. Rule 11(c) provides that, after notice and an opportunity to be heard, the court may impose an appropriate sanction for violation of Rule 11(b), which "shall be limited to what is sufficient to deter repetition of such conduct or comparable conduct by others similarly situated." V.R.C.P. 11(c)(1), (2).

Defendants request that the court impose a pre-filing injunction on plaintiff. They note that plaintiff has been warned about citing fake citations in at least one previous case, as the court noted in its May 20 order; that plaintiff has repeatedly and falsely claimed he would stop doing so[1]; and that plaintiff, representing himself, continues to file prolific amounts of litigation throughout the Vermont courts. Plaintiff opposes any sanction. He largely admits the violations but argues they were the result of a traumatic brain injury he suffered in 2018, which required him to rely on artificial intelligence software to prepare his legal filings.

In determining whether a prefiling injunction is an appropriate sanction under Rule, the court considers the following factors:

> (1) the litigant's history of litigation and in particular whether it entailed vexatious, harassing or duplicative lawsuits; (2) the litigant's motive in pursuing the litigation, e.g., does the litigant have an objective good faith expectation of prevailing?; (3) whether the litigant is represented by counsel; (4) whether the litigant has caused needless expense to other parties or has posed an unnecessary burden on the courts and their personnel; and (5)

---

[1] Indeed, plaintiff's June 27, 2025 "Notice of Corrected Filing" promises that plaintiff will verify his citations and reference only "published, controlling Vermont Supreme Court authority" before citing a fictitious Vermont Supreme Court decision in the next paragraph.

5

> whether other sanctions would be adequate to protect the courts and other parties.

*Fox v. Fox*, 2022 VT 27, ¶ 35, 216 Vt. 460 (quotation omitted). These factors are satisfied here.

*First*, plaintiff has a prolific history of litigation, including vexatious, harassing and duplicative lawsuits. In addition to his serial filings in this lawsuit that repeatedly violated Rule 11(b)(2), plaintiff has filed dozens pro se lawsuits in the Vermont courts over the past two years. The judiciary's case management system indicates that plaintiff is currently the plaintiff in ten pending civil lawsuits including this lawsuit, a recently-filed lawsuit against defendants' parent company and attorney related to defendants' filings in this lawsuit, and a recently-filed lawsuit against another news outlet based on its coverage of this lawsuit. *See Lafayette v. Gannett Co*, 25-CV-2506; *Lafayette v. Vt. Journalism Trust*, No 25-CV-2509. Moreover, as the court noted in its May 20 order and as further described above, plaintiff has persisted in citing fake citations and quotations despite numerous warnings and apologies since at least April 2024.

*Second*, plaintiff has demonstrated bad faith. As detailed in defendants' supplemental memorandum, plaintiff's conduct reveals an unambiguous motive to harass defendants and their attorney. For example, on June 20, 2025, plaintiff wrote defendant's counsel the following message:

> Hey so you representing VTD or Gannett in the next round or the appeal first? You guys can have all the penalties you want, heck bury me under them. You and Battles can exchange grapes watching the sun go down a top Fuck the Constitution hill. Enoy the weekend you diabetic wanker.

Defs.' Supp. Pre-Hearing Mem., Exh. 2. This belies plaintiff's argument that his repeated litigation misconduct can be attributed to his attempts to use assistive artificial intelligence technology to overcome a disability.

*Third*, plaintiff is not represented by counsel. Although self-represented litigants are afforded some leeway, they must comply with the Rules of Civil Procedure including Rule 11. Moreover, plaintiff is wholly responsible for his own misconduct.

*Fourth*, plaintiff's litigation tactics, in particular his numerous repetitive filings containing false citations and quotations, has caused unnecessary expense and burden to plaintiff's litigation opponents and to the court and its personnel.

*Fifth*, no other sanction besides a pre-filing injunction would be adequate to protect the courts and other parties. Plaintiff has repeatedly apologized and promised not to continue citing fake citations and quotations. He as continued to do so anyways. In successfully applying for a waiver of court filing fees, plaintiff claims he has no assets or income. He presumably cannot pay a monetary sanction. The anti-SLAPP statute makes

6

defendant responsible for plaintiff reasonable attorney's fees, as explained above. An order requiring plaintiff to pay an additional fine he cannot afford would serve no purpose.

Accordingly, the court will impose a limited pre-filing injunction on plaintiff as a sanction for his repeated litigation misconduct in this and other cases. Plaintiff is hereby enjoined from filing any pleading, complaint, motion, letter or other document in the Lamoille Civil Division unless represented by an attorney, or if unable obtain an attorney, unless plaintiff first obtains permission for the proposed filing from the assigned superior court judge. Plaintiff may request permission by filing a request, not to exceed five pages, along with any proposed filing that explains why plaintiff is unable to obtain counsel and states the relevant facts, law, and motivation for the filing. This pre-filing injunction does not extend to plaintiff's currently pending cases, but the court may extend the injunction as necessary to deter future litigation misconduct.

### Order

The motion for attorney's fees (Motion 8) is GRANTED.

The court additionally sanctions plaintiff by imposing a limited pre-filing injunction. Plaintiff is enjoined from filing any pleading, complaint, motion, letter or other document in the Lamoille Civil Division unless represented by an attorney, or if unable obtain an attorney, unless plaintiff first obtains permission for the proposed filing from the assigned superior court judge. Plaintiff may request permission by filing a request, not to exceed five pages, along with any proposed filing that explains why plaintiff is unable to obtain counsel and states the relevant facts, law, and motivation for the filing. This pre-filing injunction does not extend to plaintiff's currently pending cases, but the court may extend the injunction as necessary to deter future litigation misconduct.

Electronically signed on: 12/18/2025 pursuant to V.R.E.F. 9(d)

_____
Benjamin D. Battles
Superior Court Judge